**UNITED STATES of America, Plaintiff**

v.

**James Lewis SAVAGE, Defendant**

**Case No. LA CR 08–00258–VBF, Case No. LA CV 16–03864–VBF**

United States District Court, C.D. California.

Signed January 12, 2017

---

Jean–Claude Andre, AUSA–Office of US Attorney, Los Angeles, CA, for Plaintiff.

Rick D. Goldman, Federal Public Defender, Los Angeles, CA, for Defendant.

**PROCEEDINGS (in chambers): Order Denying Habeas Motion (CV #1 and CR #27) for Lack of Merit; Directing Entry of Separate Final Judgment; Directing Separate Certificate of Appealability Ruling; Terminating and Closing the Civil Case**

HONORABLE VALERIE BAKER FAIRBANK, SENIOR UNITED STATES DISTRICT JUDGE

Represented by counsel, federal prisoner James Lewis Savage ("petitioner") initiated this action for a writ of habeas corpus pursuant to 28 U.S.C. section 2255. The Court has reviewed the habeas corpus motion and accompanying memorandum, the respondent government's opposition brief, the petitioner's reply brief, the underlying federal indictments and judgments of conviction, and the applicable law. **For the reasons that follow, the Court will deny the habeas petition.**

To begin with, the Court finds that the parties' briefs on both sides were excellent. Preliminarily, the Court agrees with petitioner that his habeas petition is not barred by the waiver of collateral-attack[1] rights in his plea agreement, is not

---

1. In contrast to direct appeal, collateral attack or collateral review encompasses all attempts to challenge a criminal conviction or sentence after the conviction has become final. *See Wright v. Vasquez*, 2009 WL 4665698, *3 (C.D. Cal. Dec. 4, 2009) (Feess, J.) (referring to "cases on collateral review, i.e., cases in which convictions are final"). Most com-

procedurally defaulted, and is not untimely. *See* Petitioner's Opening Memorandum at 20–21 and Petitioner's Reply (Doc 18) at 14–36. The Court further agrees with petitioner that the residual clause of the Career Offender Guideline's definitional section, U.S.S.G. section 4B1.2(a), must be stricken as unconstitutionally vague after *Johnson v. United States* (U.S. 2015).

The Court will then determine, however, that the petition lacks merit because Savage's current conviction for federal unarmed bank robbery and his past convictions for federal unarmed and armed bank robbery all constitute "crimes of violence" *by their nature* for purposes of the Career Offender Guideline, U.S.S.G. section 4B1 (either with or without the application of Application Note ("Note") 1). The Court approves and adopts the government's opposition brief in this regard, *see* Doc 13 at 22–42. Consequently, the Court will conclude that in determining Savage's term of imprisonment, it was appropriate to begin with the higher range recommended for career offenders as this Court did in 2008. In other words, petitioner has failed to show that his career-offender sentence is the result of constitutional error or that it worked a manifest injustice, which means that he has not established a basis for federal habeas relief from his sentence. Accordingly, the Court will enter final judgment in favor of the respondent in the civil (habeas) case. The Court will, however, grant petitioner a certificate of appealability on all merits issues that it resolved adversely to him.

On February 29, 2008, an indictment issued charging him with one count of unarmed bank robbery in violation of 18 U.S.C. section 2113(a). *See* LA CR 08-00258–VBF Documents ("CR Docs") 8–10. **The federal statute on Bank Robbery and Incidental Crimes, 18 U.S.C. § 2113, provides in part as follows:**

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters of attempts to enter any bank, ... with intent to commit in such bank ... any felony affecting such bank ... and in violation of any statute of the United States, or any larceny

—Shall be fined under this title or imprisoned not more than twenty years, or both.

According to the Supreme Court, "subsection (a) contains no explicit *mens rea* requirement of any kind." *Carter v. U.S.*, 530 U.S. 255, 267, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). "Properly applied, however, the presumption in favor of *scienter* demands ... that we read subsection (a) as requiring proof of *general intent*—that is, that the defendant possessed knowledge with respect to ... the taking of property of another by force and violence or intimidation." *Id.* at 268, 120 S.Ct. 2159.

**The subsection specifically pertaining to *armed* Federal Bank Robbery further states as follows:**

*Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and of this section, assaults any person, or puts in jeopardy the life of any person by the use of a*

monly, collateral review refers to habeas actions. *See, e.g., Zizzo v. U.S.*, 447 F.2d 857, 860 (7th Cir. 1971) ("In those cases coming on collateral review, i.e. habeas corpus, ....").

*dangerous weapon or device*, shall be fined under this title or imprisoned not more than twenty-five years, or both. 18 U.S.C. section 2113(d) (emphasis added).

## SAVAGE'S PLEA AGREEMENT AND PRE–SENTENCE REPORT

On June 5, 2008, the parties filed their written plea agreement (CR Doc 18). On June 12, 2008, the Court conducted a plea colloquy and accepted petitioner's guilty plea to one count of unarmed bank robbery, *see* CR Doc 20 (Minutes). According to the plea agreement and Pre–Sentence Report ("PSR"), petitioner walked into a Bank of America in West Hollywood, California, on February 14, 2008 with a dark sweater wrapped around his left hand, approached a teller, and demanded cash. *See* PSR ¶ 11. The teller recounted that she was "fearful that [Savage] may have a gun under his sweater" and thus complied with his demand, giving him $3,775 in cash from her drawer. *See* PSR ¶ 12; *see also generally U.S. v. Gordon*, 642 F.3d 596, 598 (7th Cir. 2011) ("Intimidation exists when a bank robber's words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force."), *cited by U.S. v. Cunningham*, 2016 WL 687902, *2 (N.D. Ill. Feb. 19, 2016). Police apprehended petitioner shortly after he left the bank and recovered the money and the sweater from him, but did not recover a gun, *see* PSR ¶ 12.

The agreement contained a provision waiving petitioner's right to "bring a post-conviction collateral attack on the conviction or sentence ... except ... based on ... an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction." *See* Pet Exhibits ("Ex") C ¶ 17. In return, the government agreed to abide by the sentencing stipulation in the agreement and recommend that the Court subtract offense levels to reflect acceptance of responsibility. *See* Pet Ex C ¶ 15.

## SAVAGE'S SENTENCE AND THE CAREER–OFFENDER GUIDELINE

The Ninth Circuit explains that the Career Offender Guideline "increases a defendant's advisory sentencing range if, as relevant here, the defendant has two or more prior convictions for a 'crime of violence.'" *U.S. v. McCandless*, 841 F.3d 819, 821 (9th Cir. 2016) (per curiam) (quoting U.S.S.G. section 4B1.1). Prior to sentencing, the U.S. Probation Office recommended that this Court determine that Savage qualified as a career offender under U.S.S.G. 4B1.1 because he had prior convictions for at least two crimes qualifying as crimes of violence as defined by the residual clause of the Career Offender Guideline, U.S.S.G. § 4B1.2(a).

At that time, there was no Supreme Court or Ninth Circuit precedent holding or suggesting that the residual clause of the Career Offender Guideline was void for vagueness or otherwise constitutionally infirm. Accordingly, the Court adopted Probation's recommendation, and used as its starting point the range of imprisonment terms that the Guidelines recommended for career offenders. (Savage had nine criminal-history points. Absent the career-offender designation, he would have had been in criminal history category IV; the career-offender designation placed him in criminal history category VI, the highest category. *See* PSR ¶¶ 54–56.

**When petitioner Savage was sentenced on September 25, 2008, the Career Offender Guideline's main sentence-enhancement provision** [2] **stated in pertinent part as follows:**

---

**2.** In the Background to the Career Offender Guideline, the Sentencing Commission ex-

(a) a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from this table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| ( C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12. |

* If an adjustment from section 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

U.S.S.G. § 4B1.1(a) and (b) (2008). Guideline 4B1.1(c) has no application to petitioner's case, because it governs career offenders whose instant conviction is for a violation of 18 U.S.C. section 924(c) or 929(a). Application Note 1 to Guideline 4B1.1 provides that the term "crime of violence" is defined in Guideline 4B1.2.

**In turn, the Career Offender Guideline in effect on Savage's sentencing date defined a "crime of violence" for this purpose as any offense under federal or state law,**

punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (2008) (italics added). The italicized language is the residual clause of the Career Offender Guideline.

plains that it promulgated section 4B1.1 to implement 28 U.S.C. section 994(h). That statutory subsection "mandates that the Commission assure [sic] that certain 'career' offenders receive a sentence of imprisonment 'at or near the maximum term authorized.'" The Background further explains that while the Guideline's definition of career offender "track[s] in large part the criteria set forth in 28 U.S.C. section 994(h)", the Commission has used its statutory amendment authority to "modi[fy] this definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and, in the language of 28 U.S.C. section 991(b)(1)(B), to avoid 'unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . .'"

"While the Guidelines do not define the term 'physical force' under the career offender provision, because of the definitional similarities between a violent felony under the ACCA and a crime of violence under section 4B1.2," it is appropriate to use the ACCA's definition of "physical force" in Guideline section 4B1.2 cases. *U.S. v. John Haldemann*, No. 15–13873, 664 Fed.Appx. 820, 822 n.2, 2016 WL 6595936, *1 n.2 (11th Cir. Nov. 8, 2016) (per curiam) (Tjoflat, Jordan, Julie Carnes).[3]

**The following are petitioner's prior convictions which this Court found to be violent felonies for purposes of the Career Offender Guideline:**

—the instant **February 14, 2008 unarmed bank robbery** in violation of 18 U.S.C. § 2113(a), to which he pled guilty pursuant to a written plea agreement, and for which the undersigned sentenced him **to 169 months in prison** on September 25, 2008;

—two **unarmed bank robberies** in violation of 18 U.S.C. § 2113(a) for which he was convicted in C.D. Cal. Case No. LA CR 87–00036– JSL on July 22, 1987 and sentenced to **five years in prison;**

—an *armed* **bank robbery** in violation of 18 U.S.C. § 2113(a) and (d) for which he was convicted in C.D. Cal. Case No. LA CR 90–01008–

K–1 on May 6, 1991 and sentenced to **18 years in prison**

*See* PSR [4] ¶¶ 27–29, 42–46, and 47–49. During each of four bank robberies committed in September–October 1990, petitioner displayed a gun; during one of those 1990 robberies, he pointed a gun at a teller. *See* PSR ¶ 49.

In calculating Savage's criminal history, this Court followed the Probation Office's recommendation and did *not* count numerous state-court convictions because they were "outside of the time frame countable by the Guidelines" per U.S.S.G. section 4A1.2(e)(3), *see* PSR ¶ 33. Guideline section 4A1.2(e), entitled Definitions and Instructions for Computing Criminal History— Applicable Time Period, provides in its entirety as follows:

(1) any prior sentence of imprisonment exceeding 1 year and 1 month that was imposed within 15 years of the defendant's commencement of the instant offense is counted. Also counted is any prior sentence of imprisonment exceeding 1 year and 1 month, whenever imposed, that resulted in [him] being incarcerated during any part of such 15-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

---

**3.** "An amendment to the Career Offender Guidelines, which became effective August 1, 2016, redefines crime of violence by, among other things, deleting the residual clause and adding robbery to the list of enumerated offenses." *U.S. v. Kinman*, 2016 WL 6124456, *2 n.4 (S.D. Cal. Oct. 20, 2016) (citing U.S.S.G. Am. 798 (Aug. 1, 2016), available at http://www.ussc.gov/sites/default/files/pdf/ guidelines-manual/2015/GLMSupplement.pdf, last retrieved on December 28, 2016). Neither petitioner nor the government has argued that

the 2016-amended version should apply to analysis of this habeas petition.

**4.** The Probation Office issued the PSR on August 18, 2008, but it was not docketed in LA CR 08–00258–VBF–1 at that time. On June 2, 2016, Savage's habeas counsel filed the PSR under seal, per C.D. Cal. General Order 15–08, as CV Doc 4 and CR Doc 28, and served it on the government's habeas counsel.

(3) Any prior sentence not within the time periods specified above is not counted.

(4) The applicable time period for certain offenses committed prior to age eighteen is governed by section 4A1.2(d)(2).

**The convictions that were *not* held against Savage in calculating his criminal history were these:**

a 1972 conviction for misdemeanor grand theft (snatching a purse from two women separately walking down the street) committed in December 1971, when Savage was 23 years old, PSR ¶ 34;

a 1977 conviction for second-degree burglary of an apartment that Savage committed at age 28, for which he served 180 days in county jail, PSR ¶ 35;

a 1980 robbery perpetrated by pushing a 69-year-old woman down on the sidewalk and taking her purse, which Savage committed at age 31, but for which no sentence is noted, PSR ¶ 36;

1984 convictions for two robberies, an attempted robbery, and taking a vehicle without consent that Savage committed on December 23, 1983, at age 36, for which he received six years in prison, PSR ¶ 38;

1984 convictions for "a series of robberies" which the 36-year-old Savage committed "in bank parking lots, involving physical assaults on depositors" who Savage told police were "in their 40s and 50s, with "one man [who] was much older", for which no sentence is listed, PSR ¶ 39; and a 1987 Malibu Municipal Court conviction for driving under the influence, committed when Savage was 39 years old, for which he served one day in jail and 36 months on probation, PSR ¶ 40.

**Application of the career-offender guideline resulted in a recommended term of imprisonment of 151 to 188 months** (low end 12 years 7 months to high end of 15 years 8 months). *See* PSR ¶¶ 28 and 81.

After considering petitioner's sentencing memo (Crim Doc 21), **this Court on September 25, 2008** held a sentencing hearing (Crim Doc 24), adopted and followed the PSR, and issued a Judgment and Commitment Order (Crim Doc 26) **sentencing petitioner to 169 months (14 years and one month)** in federal prison followed by three years of supervised release. That term of imprisonment was precisely in the middle of the range recommended by the Career Offender Guideline, as recommended in petitioner's plea agreement.

Savage did not pursue a direct appeal of his conviction or sentence, and he did not file any habeas petitions directed at the instant conviction or sentence before the instant 2255 petition.

INSTANT HABEAS PROCEEDING

**On June 2, 2016, Deputy FPD Mircheff entered an appearance on behalf of petitioner (Crim Doc 26) and filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CR Doc 27 or CV Doc 1), as well as a copy of petitioner's sealed presentence report (CR Doc 28 or CV Doc 4). Through counsel, Savage contends that pursuant to *Johnson v. U.S.*, 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), his sentence was imposed in violation of the U.S. Constitution.** In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was void because it was unconstitutionally vague. After the ACCA enumerated crimes that always constitute violent felonies, its residual clause defined a "violent felony" to further include any other federal or state felony, not enumer-

ated, "that otherwise involves conduct that presents a serious potential risk of physical injury of another."[5]

**Specifically, Savage contends that** his instant conviction for unarmed bank robbery in violation of 21 U.S.C. section 2113(a), which the Court found to be a crime of violence triggering application of the Career Offender Sentencing Guideline, is no longer a crime of violence after *Johnson.* Savage further contends that his 1987 federal conviction for unarmed bank robbery and his 1991 conviction for armed bank robbery likewise are no longer crimes of violence after *Johnson. See* Petition at 3–20.

By Order issued July 13, 2016, this Court issued an order scheduling briefs (CV Doc 6 at 2). On August 18, 2016, AUSA Riordan entered an appearance on behalf of respondent (CV Doc 7).

**On August 24, 2016, the government filed a motion to stay briefing and consideration of Savage's section 2255 habeas motion pending the Supreme Court's decision in *Beckles*, No. 15–8544 (CV Doc 8). By Order issued October 11, 2016 (CV Doc 16), this Court denied the government's motion to stay.**

The government first contends that the Court should dismiss Savage's *Johnson*-based habeas claim with prejudice on three grounds without reaching the merits of that claim. First, the government contends

that the claim is barred by the collateral-attack waiver in his plea agreement. *See* Doc 13 (Gov Opp to 2255) at 2 and 5–10; *but see* Doc 1 (Habeas Motion) at 28–29. Second, the government contends that Savage procedurally defaulted that claim by failing to assert it at sentencing or on direct appeal to the Ninth Circuit. *See* Doc 13 (Gov Opp to 2255) at 2 and 10–13; *but see* Doc 18 (Savage Reply) at 14–22. Third, the government contends that the claim is untimely under AEDPA because Savage did not assert it until more than a year after his conviction became final. *See* Doc 13 (Gov Opp to 2255) at 2 and 13–22; *but see* Doc 18 (Savage Reply) at 23–36.

Alternatively, the government contends that the Court should deny Savage's *Johnson* claim for lack of merit. According to the government, even after *Johnson*, both Savage's instant federal conviction for unarmed bank robbery and his prior federal bank-robbery convictions are crimes of violence, triggering the application of the Career Offender Guideline. *See* Doc 13 (Gov Opp) at 2 and 22–42; *but see* Doc 18 (Reply) at 36–44.

## LEGAL STANDARD: HABEAS CORPUS RELIEF UNDER 28 U.S.C. SECTION 2255

A prisoner who is in custody under sentence of a federal court who wishes to collaterally attack the validity of his conviction or sentence must do so by filing a motion to vacate, set aside, or correct the

---

**5.** Less than a year after issuing *Johnson*, the Supreme Court in *Welch v. U.S.*, — U.S. ——, 136 S.Ct. 1257, 1264–68, 194 L.Ed.2d 387 (U.S.2016), held that *Johnson* had announced a new substantive rule of constitutional law that applies retroactively on collateral review of ACCA–enhanced sentences. Petitioner and the government agree that *Welch* did not address whether *Johnson* also applies to the Career Offender Guideline. *See* Doc 13 at 4. They further agree that *Welch* did not address whether *Johnson* applies retroactively on *collateral review* of sentences

increased pursuant to that guideline. *See* Doc 13 (Gov Opp) at 4. Those issues are before the Supreme Court in *Beckles*, S.Ct. No. 15–8544, wherein argument was held on November 28, 2016. *See* https://www. supremecourt.gov/search.aspx?filename=/ docketfiles/15-8544.htm, last retrieved Dec. 15, 2016. The Ninth Circuit opined that "[t]here are substantial arguments on both sides of" these two issues, "and it is far from clear how the Supreme Court will rule." *McCandless*, 841 F.3d at 821.

sentence pursuant to 28 U.S.C. section 2255 in the court that sentenced him, and petitioner has done so here. Under section 2255(a), a sentencing court is authorized to grant habeas relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

■ To obtain relief under Section 2255, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166, 102 S.Ct. 1584. "If a petitioner does not allege lack of jurisdiction or constitutional error, an error of law will not provide a basis for habeas relief unless that error resulted in a complete miscarriage of justice or [resulted] in a proceeding inconsistent with the rudimentary demands of fair procedure." *Hamilton v. U.S.*, 67 F.3d 761, 763–64 (9th Cir. 1995).[6]

■ If the court determines that a petitioner has shown his entitlement to relief

under section 2255, it must "vacate and set the judgment aside" and "then do one of four things: 'discharge the prisoner or resentence him or grant a new trial or correct the sentence ....'" *U.S. v. Benard*, 2016 WL 5393939, \*1 (N.D. Cal. Sept. 27, 2016) (quoting section 2255(b) and citing *U.S. v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999)).

## THE SUPREME COURT'S HOLDING IN *Johnson v. U.S.* (2015)

Petitioner Savage challenges the sentence that this Court imposed on September 25, 2008 for his February 14, 2008 commission of unarmed bank robbery. Petitioner urges the Court to extend the Supreme Court's holding in *Johnson v. U.S.*, 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) from the statutory sentence-enhancement context to the Guideline sentence-enhancement context. In *Johnson*, the Supreme Court held that the residual clause in the Armed Career Criminal Act ("ACCA") violates the Constitution's Due Process prohibition on vague criminal laws, *see* 135 S.Ct. at 2563. The

---

**6.** In the AEDPA era, it is not entirely clear whether a federal court may grant habeas corpus relief, under 28 U.S.C. section 2255 or otherwise, where there was no constitutional error, on the independent ground that a constitutional sentence nonetheless represented a miscarriage of justice. *See Spencer v. U.S.*, 773 F.3d 1132, 1145, 1146 (11th Cir. 2014) (Wilson, J., dissenting from en banc ruling, joined by Martin, Jordan, & Rosenbaum, JJ.) ("Had the district court correctly applied the sentencing guidelines, Spencer would likely be a free man today. Instead, because of the district court's erroneous application of the career offender enhancement, Spencer faces the prospect of spending nearly six more years in prison unnecessarily. Contrary to the majority, I do not read Supreme Court precedent to say that a 'lawful' sentence forecloses a determination by us that a complete miscarriage of justice has taken place in Spencer's case. Accordingly, I would reach the merits of Spencer's claim because I believe that an erroneous

Guideline determination that is likely to result in a person spending such a considerable amount of time in prison—here, six years—constitutes a fundamental error resulting in a miscarriage of justice. \* \* \* [T]he Supreme Court has clearly held that an error resulting in an unlawful sentence i.e., a sentence that is beyond the court's legal authority—is *sufficient* to satisfy the complete miscarriage of justice standard. \* \* \* But nowhere has the Supreme Court held that a finding of unlawfulness is *necessary* to satisfy the complete miscarriage of justice standard.") (italics in original, citations omitted).

Even assuming that a federal court may grant habeas relief from a constitutional and lawful sentence, that would be of no avail to petitioner here. Petitioner fails to convince the Court that his constitutionally valid and correctly calculated career-offender sentence in this case represents a miscarriage of justice.

ACCA defines "violent felony" as any crime

> punishable by imprisonment for a term exceeding one year, or any act ... that—(I) has as an element the use, attempted use, or threatened sue of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* ....

18 U.S.C. section 924(e)(2)(B) (emphasis added). The italicized thirteen words are referred to as the ACCA's residual clause. *Johnson* held that the ACCA's residual clause "fails to give ordinary people fair notice of the conduct it punishes" and "invites arbitrary enforcement," thereby "violat[ing] the first essential of due process." *Johnson*, 135 S.Ct. at 2556–57 (citation omitted). The Supreme Court emphasized that "[t]he requirements of fair notice and enforcement standards 'apply not only to statutes defining elements of crimes, but also to statutes fixing sentences.'" *See Benard*, 2016 WL 5393939 at *1 (N.D. Cal. Sept. 27, 2016) (quoting *Johnson*, 135 S.Ct. at 2557 (citation omitted)). "For these reasons, *Johnson* found that 'increasing a defendant's sentence under the [ACCA statute's residual] clause denies due process of law.'" *Id.*

Petitioner contends that he is entitled to habeas relief because the Sentencing Guideline provision that this Court applied to enhance his sentence—the residual clause of the Career Offender Guideline, U.S.S.G. 4B1.2—has the same definition of a "crime of violence" that the Supreme Court determined was unconstitutionally vague in the ACCA *statute*'s residual clause. Savage's sentence for the instant unarmed bank robbery was enhanced because the Court determined that prior federal convictions for unarmed and armed

bank robbery constituted crimes of violence under the Guideline's residual clause, U.S.S.G. 4B1.2(a).

"Although the residual clause in U.S.S.G. section 4B1.2(a)(2)"—the Career Offender Guideline's residual clause—"is identical to the residual clause in the ACCA (18 U.S.C. section 924(e)(2)(B)), *Johnson* did not expressly address ... the U.S.S.G." *Benard*, 2016 WL 5393939 at *2. However, as Judge Illston of the Northern District has pointed out, "the Ninth Circuit makes 'no distinction between the terms 'violent felony' [as defined in the ACCA] and 'crime of violence' [as defined in section 4B1.2(a)(2) of the Sentencing Guidelines] for purposes of interpreting the residual clause[s]." *Benard*, 2016 WL 5393939 at *2 (quoting *U.S. v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013) (alterations in original *Spencer*)).

In other courts, the federal government has conceded that *Johnson*'s holding with regard to the residual clause of the ACCA logically applies to the identically worded residual clause of the Career Offender Guideline, at least for cases on direct appeal. *See Benard*, 2016 WL 5393939 at *2. The government here, however, does *not* concede that point. The government also does *not* concede the further proposition that *Johnson* should be applied retroactively to cases on collateral review.

**THE SUPREME COURT'S HOLDING IN *Welch v. U.S.* (2016)**

Less than a year after the Supreme Court issued *Johnson*, the Supreme Court issued a decision holding that *Johnson* applies retroactively to collateral attacks on ACCA–enhanced sentences. *See Welch v. U.S.* (2016). But *Welch* left open two important questions that this Court will need to decide below: (1) whether *Johnson*'s holding applies not only to the residual clause of the ACCA but also to the identically worded residual clause of the Career

Offender Sentencing Guideline, U.S.S.G. sections 4B1.1 and 4B1.2, and (2) if so, whether *Johnson* applies retroactively in the context of collateral attacks on Career Offender Guideline-enhanced sentences.

### ANALYSIS OF Savage's Section 2255 Habeas Petition—NON–MERITS ISSUES

1. Under *U.S. v. Torres* (9th Cir. 2016), the Collateral–Attack Waiver in Savage's Plea Agreement Does Not Bar this Habeas Motion Because the Motion Contends His Sentence Was "Illegal"

As noted above, Savage's plea agreement contained a provision stating that Savage

> gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or any explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

Petition Exhibit ("Ex") C ¶ 17. It is undisputed that Savage is not collaterally attacking his sentence on the basis of ineffective assistance of counsel or newly discovered evidence. Nor does Savage allege that he entered into the plea in a manner that was not free, voluntary, knowing, and intelligent. Nor is Savage arguing that there has been an explicitly retroactive change in the statutes of conviction or any applicable sentencing statutes.

The Court need not consider the alternative argument that *Johnson* (U.S. 2015) or *Welch* (U.S. 2016) or other binding post-sentencing decisional law effected an "explicitly retroactive change in the applicable Sentencing Guidelines ....", which under the plea agreement's waiver provision itself would have allowed Savage to collaterally attack his sentence on that basis.

■ The government correctly notes that under Ninth Circuit precedent, a criminal convict's knowing and voluntary waiver of his right to collaterally attack his conviction or sentence is generally enforceable and must be enforced. *See* Doc 13 (Gov Opp to 2255) at 6 (citing *U.S. v. Reves*, 774 F.3d 562, 566 (9th Cir. 2014) and out-of-circuit decisions). The government also points to Ninth Circuit precedent stating that the strong public policy in favor of plea agreements and their enforcement is advanced by enforcement of plea-agreement waivers of collateral-attack rights. *See* Doc 13 (Gov Opp to 2255) at 6 (citing *U.S. v. Navarro–Botello*, 912 F.2d 318, 321 (9th Cir. 1990)); *see also U.S. v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000) (stating that waivers of statutory appellate rights and statutory collateral-attack rights "usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements").

■ **Subsequent changes in the law which do not render the sentence unconstitutional, do not undercut the validity and enforceability of a collateral-attack waiver,** *see U.S. v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007), and a collateral-attack waiver will not be invalidated merely because unanticipated events occur after sentencing. *See, e.g., U.S. v. Eastwood*, 148 Fed.Appx. 589 (9th Cir. 2006) (waiver enforceable and resentencing not warranted, despite changes in sentencing law brought about by *Booker* holding that Guidelines were merely advisory rather than binding); *U.S. v. Morgan*, 406 F.3d 135 (2d Cir. 2005) (same); *Adesina v. U.S.*, 461 F.Supp.2d 90, 96 (E.D.N.Y. 2006) ("Under the well-settled law of the Second Circuit, a valid waiver of the right to appeal or otherwise challenge a sentence is enforceable as to subsequent changes in the law,

even as to constitutional arguments, that were not anticipated at the time the waiver was made.").

■ "However, ... [plea-agreement] waivers" of appellate or collateral-attack rights "are not ironclad." *U.S. v. Terrell*, 217 F.Supp.3d 1277, 1284, 2016 WL 6582993, *6 (E.D. Wash. Nov. 4, 2016). "In the Ninth Circuit, a valid waiver 'will not apply' if 'the sentence violates the law.' " *Terrell*, 217 F.Supp.3d at 1283–84, 2016 WL 6582993 at *6 (quoting *Bibler*, 495 F.3d at 624). For this purpose, "[a] sentence is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Bibler*, 495 F.3d at 624.

"The Ninth Circuit has held that if *Johnson* by implication nullifies the residual clause of the Career Offender Guideline"—just as *Johnson* expressly nullified the identically worded residual clause of the ACCA statute—"sentences rendered pursuant to that clause are likely unconstitutional and would be 'illegal,' and thus waivers in plea agreements cannot bar collateral attacks on that basis." *Terrell*, 217 F.Supp.3d at 1284, 2016 WL 6582993 at *6 (citing *U.S. v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016)). *Contra U.S. v. Mitchell*, 657 Fed. Appx. 605 (7th Cir. 2016) (by entering plea agreement, defendant validly waived his right to attack any non-jurisdictional defect occurring before the entry of the plea, including the argument that federal armed bank robbery was not a violent crime for purposes of sentencing enhancement).

Accordingly, our Circuit's decision in *Torres* prevents this Court from joining the district courts that have held that a collateral-attack waiver in a habeas petitioner's plea agreement requires the dismissal of habeas Due Process claims based on *Johnson* (U.S. 2015) and *Welch* (U.S. 2016). *See* Doc 13 (Gov Opp) at 7 (citing,

*inter alia, U.S. v. Inoshita*, No. 15–0015–JMS, 2016 WL 2977237, *4 (D. Haw. May 20, 2016) ("In sum, [petitioner]'s waiver encompasses the right to file a section 2255 motion, except under circumstances not applicable in this case, and he made the waiver knowingly and voluntarily. Thus, [the] waiver is valid."), and *Bradley v. U.S.*, No. 2:15–cv–02666, 2016 WL 626572, *4 (W.D. Tenn. Feb. 16, 2016) ("The Court finds that Bradley's waiver of the right to collateral review in his plea agreement was a valid waiver, and therefore, Bradley waived his right to section 2255 relief.")). Likewise, this Court is obligated to follow *Torres* rather than the contrary Eleventh Circuit holding on which the government relies. *See* Doc 13 (Gov Opp) at 10 (citing *Gilbert v. U.S.*, 640 F.3d 1293, 1321–22 (11th Cir. 2011) (en banc)); *see also Sanford v. U.S.*, 841 F.3d 578 (2nd Cir. 2016) (per curiam) (plea waiver of right to collaterally attack sentence was enforceable to bar habeas claim that Career Offender Guideline's residual clause was unconstitutionally void due to vagueness).

■ The Court thus determines that the collateral-attack waiver in Savage's plea agreement may not be enforced to bar him from bringing the instant habeas claim. *Accord U.S. v. Waterman*, 2016 WL 5921258, *3 (N.D. Cal. Sept. 21, 2016) (following *Torres* and concluding that plea agreement's waiver of collateral-attack rights did not bar petitioner from seeking section 2255 relief from sentence to the extent that the sentence was calculated under arguably void portion of career-offender guideline); *U.S. v. Bailey*, 2016 WL 6514167, *2 (N.D. Cal. Oct. 17, 2016) (same) (citing *Torres* and *U.S. v. McGary*, 2016 WL 4126451, *2 (N.D. Cal. Aug. 3, 2016)).

2. Savage's *Johnson*–Based Claim is Not Procedurally Defaulted

Having concluded that the plea-agreement waiver of collateral-attack rights cannot bar Savage's *Johnson*-based habeas challenge to his sentence under the Career Offender Guideline, the Court next considers the government's contention that that challenge is procedurally defaulted. The government contends that Savage defaulted this habeas claim by failing to raise a *Johnson*-like Due Process challenge to the Career Offender Guideline's residual clause on direct appeal, even though the Supreme Court had not yet issued *Johnson*. *See* Doc 13 (Gov Opp) at 10 (citing *U.S. v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) and *U.S. v. Frady*, 456 U.S. 152, 162, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

■ **It is true that a petitioner who challenges his sentence under section 2255 typically is considered to have procedurally defaulted his claim if he did not raise it on direct appeal.** *See Benard*, 2016 WL 5393939 at *3 (citing *Ratigan*, 351 F.3d at 960). "As a general rule, a defendant cannot raise an argument on collateral review that was not raised on direct appeal." *U.S. v. Trujillo*, 2016 WL 7034973, *5 (D. Colo. Dec. 1, 2016) (citing *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 351, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006)).

**However, there is an exception "if the [petitioner] can first demonstrate either 'cause' and actual 'prejudice,' ... or that he is 'actually innocent.' "** *Bousley v. U.S.*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations omitted)). *Cf. also English v. U.S.*, 42 F.3d 473, 479 (9th Cir. 1994) ("[I]t has been the general rule in this circuit that 'constitutional claims may be raised in collateral proceedings even if the defendant failed to pursue them on appeal.' ") (quoting *U.S. v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).

■ **Petitioner Savage does not make even a colorable claim that he was actually innocent of the instant conviction for federal unarmed bank robbery or the relevant prior convictions for federal armed and unarmed bank robbery.** "[T]o state a valid claim of 'actual innocence' sufficient to avoid a procedural bar, a petitioner must produce 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Black v. Vasquez*, 2016 WL 6436822, *7 (C.D. Cal. Oct. 31, 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995) (applying standard of *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986))). Petitioner does not purport to have any new reliable evidence, not presented at trial, that would tend to show that he did not in fact commit one or more of the federal bank robberies that formed the predicate for his designation as a U.S.S.G. 4B1 career offender. Accordingly, in order to avoid the procedural default of his *Johnson* Due Process claim, he must show "cause and prejudice." For the reasons set forth below, the Court concludes that petitioner has done so.

**In the government's view (Doc 13 at 12), Savage's "*Johnson* claims" are not "based on a newly recognized rule that is 'so novel that its legal basis was not reasonably available" before the Supreme Court's issuance of *Johnson* in 2015.** On the contrary, argues the government, years before the Supreme Court issued *Johnson* (2015) and *Welch* (2016),

[a]t the time of petitioner's sentencing and direct appeal, arguments challenging the constitutionality of ACCA's similarly worded residual clause were not novel. "[T]he Federal Reporters were replete with cases" discussing challenges

to the ACCA's similarly worded residual clause on vagueness grounds. *Bousley*, 523 U.S. at 622 [118 S.Ct. 1604]; *see, e.g., Sykes v. U.S.*, 564 U.S. 1, 15–16 [131 S.Ct. 2267, 180 L.Ed.2d 60] (2011) (rejecting argument); *U.S. v. Argo*, 925 F.2d 1133, 1134 (9th Cir. 1991) (same); *U.S. v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990) (same).

Similarly, challenges to whether various offenses constituted crimes of violence and whether various prior convictions constituted crimes of violence were common. The fact that such challenges were not successful does not excuse petitioner's failure to pursue a similar challenge to the residual clause of U.S.S.G. § 4B1.2, because "futility cannot constitute cause [for failing to raise a constitutional argument on direct appeal] if it means simply that a claim was unacceptable to a particular court at that particular time."

Doc 13 at 12 (paragraph break added) (citing *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604 (internal quotation marks omitted)).

■ **Alternately, the government argues that even if Savage could establish cause for failing to raise the instant Due Process vagueness challenge to the Career Offender Guideline on direct appeal, he cannot show he would be prejudiced if the Court found this claim to be defaulted.** *See* Doc 13 (Gov Opp) at 12. As the government notes, to have a federal habeas court decide the merits of an otherwise defaulted claim, a habeas petitioner must show not merely that the default "created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting his entire proceedings with error of constitutional dimensions." Doc 13 at 12–13 (quoting *U.S. v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007)) (italics in *Braswell*) (brackets omitted). According to the government, Savage

can show prejudice only if he can establish that both unarmed bank robbery (the instant conviction) and federal armed bank robbery (four prior convictions) are *not* crimes of violence for purposes of this Guideline. The government contends that both armed and unarmed bank robbery under federal law are crimes of violence for purposes of that guideline. *See* Doc 13 at 13.

**The government posits a second reason why, in its view, petitioner will not be prejudiced if this Court refuses to reach the merits of his vagueness challenge to the Career Offender Guideline:**

> [P]etitioner cannot show prejudice [from] his [U.S.S.G. 4B1.2] enhancement of his sentence as a career offender because his 169–month sentence was below the statutory maximum term of twenty years imprisonment for the conviction he sustained, *see* 18 U.S.C. section 2113(a).

Doc13 (Gov Opp) at 13 (citing *U.S. v. Estrada*, 2008 WL 5069083, \*4 (D. Idaho July 3, 2008) and *Surratt v. US*, 165 F.Supp.2d 946, 949 (D. Minn. 2001) and *U.S. v. Mitchell*, 2001 WL 708808, \*3 (D. Del. June 20, 2001)). Lastly on this point, the government urges this Court to apply an Eleventh Circuit decision's statement that a "claim that a sentencing guideline provision was misapplied to him is not a constitutional claim" at all, *see* Doc 13 (Gov Opp) at 13 (citing no Ninth Circuit authority).

<u>Savage Has Satisfied the "Cause" Prong of the Test for Avoiding Procedural Default of a Habeas Claim</u>

■ **"To overcome a procedural default on collateral review, a [habeas] petitioner must show cause and actual prejudice."** *U.S. v. Kennedy*, 218 F.Supp.3d 1104, 1108, 2016 WL 6520524, \*3 (E.D. Cal. Nov. 3, 2016) (citing *Massaro v. U.S.*, 538 U.S. 500, 504, 123 S.Ct. 1690,

155 L.Ed.2d 714 (2003)). To show cause in this context, the habeas petitioner "must ordinarily ... show that some factor external to the defense impeded counsel's efforts to comply ... with the procedural rule." *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

 A constitutional claim is sufficiently novel that it need not be raised on direct appeal in order to be raised on later collateral review, if "its 'legal basis for the claim was not reasonably available to counsel' " in time for direct appeal. *See Kennedy*, 218 F.Supp.3d at 1108–09, 2016 WL 6520524 at *3 (quoting *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)) (alteration bracket from *Kennedy* omitted). As the Supreme Court explained in *Reed*, 468 U.S. at 17, 104 S.Ct. 2901, a claim is not reasonably available to counsel where "a decision of this Court ... explicitly overrules one of our precedents" in order to arrive at the new constitutional rule on which the claim relies. *See also U.S. v. Walker*, 214 F.Supp.3d 866, 871, 2016 WL 5921257, *2 (N.D. Cal. Oct. 5, 2016) (a convicted defendant does not procedurally default a federal claim for collateral review by failing to raise it on direct appeal where the claim would have been "futile" in the face of "a solid wall of circuit authority") (quoting *English v. U.S.*, 42 F.3d 473, 479 (9th Cir. 1994)); *Kimes v. U.S.*, 939 F.2d 776, 778 (9th Cir. 1991) (holding that "failure to object ... is not fatal to [a section 2255 petition], since well[-]settled law precluded [the] claim at the time").

As Chief Judge O'Neill of Eastern California explained in a similar case, a constitutional vagueness challenge to the Career Offender Guideline's residual clause was not reasonably available before *Johnson:*

Johnson explicitly overruled two Supreme Court cases holding that the residual clause of the ACCA [statute] was constitutional. *James v. U.S.*, 550 U.S.

192[, 127 S.Ct. 1586], 167 L.Ed.2d 532 (2007); *Sykes v. U.S.*, 564 U.S. 1[, 131 S.Ct. 2267], 180 L.Ed.2d 60 (2011). In *James*, the majority rejected the notion that the ACCA was unconstitutionally vague, stating: "[t]he statutory requirement that an unenumerated crime 'otherwise involv[e] conduct that presents a serious potential risk of physical injury to another' is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits." 550 U.S. at 210 n.6, 127 S.Ct. 1586.

Similarly, in *Sykes*, the majority declined the dissent's suggestion that the Court "admit that ACCA's residual provision is a drafting failure and declare it void for vagueness." 564 U.S. at 28, 131 S.Ct. 2267 (Scalia, J., dissenting).

Shortly before *Johnson* was decided [by the Supreme Court in 2015], the Ninth Circuit recognized that both "Supreme Court and Ninth Circuit precedent foreclose" arguments "that the ACCA's residual clause is unconstitutionally vague." *U.S. v. Martinez*, 771 F.3d 672, 678 (9th Cir. 2014)[, *vac'd and remanded to Ninth Circuit for further consideration in light of Johnson v. U.S.*, —— U.S. ——, 135 S.Ct. 2939 [2551], 192 L.Ed.2d 569 (2015).]

*Kennedy*, 218 F.Supp.3d at 1108–09, 2016 WL 6520524 at *3 (¶ break added). *Accord U.S. v. Archuleta*, 2016 WL 6568677, *3 (E.D. Cal. Nov. 3, 2016); *Waterman*, 2016 WL 5921258 at *3 ("Thus, when this Court sentenced Waterman in May 2013, a vagueness challenge [to U.S.S.G. 4B1.2(a)(2) ] was not reasonably available because higher courts had foreclosed it.") (citing *Martinez*, 771 F.3d at 678).

 Savage was sentenced on September 25, 2008, after *James* but before the Supreme Court decisions which gave rise to a colorable retroactive vagueness claim against the residual clause of the Career

Offender Guideline, *Johnson* and *Welch*. "Therefore, at the time Petitioner was sentenced, a vagueness challenge to the identically worded residual clause in [U.S.S.G.] section 4B1.2 was foreclosed by Supreme Court precedent." *Kennedy*, 218 F.Supp.3d at 1109, 2016 WL 6520524 at *3 (citing *U.S. v. Garcia*, 2016 WL 4364438, *3 (N.D. Cal. Aug. 16, 2016)); *U.S. v. Dean*, 169 F.Supp.3d 1097, 1107–08 (D. Or. 2016); *Gilbert v. U.S.*, 2016 WL 3443898, *2–*3 (W.D. Wash. June 23, 2016); *U.S. v. Stamps*, 2016 WL 3747286, *3 (N.D. Cal. June 28, 2016). *Accord U.S. v. Jefferson*, 2016 WL 6496456, *3 (N.D. Cal. Oct. 19, 2016) (petitioner had shown cause for not bringing a *Johnson*-like vagueness challenge to his "violent crime" Guideline enhancement on direct appeal) ("Though the Government is correct that the Ninth Circuit has allowed the Guidelines to be challenged for vagueness, it does not cite any Ninth Circuit precedent suggesting the applicable Guideline was vague. Mr. Jefferson was sentenced after the Supreme Court had upheld the Residual Clause. There was thus binding precedent compelling this Court to reject any vagueness challenge [he] brought, had he brought one. [He] was not compelled to make an argument that was inevitably doomed, and the Government's insistence that he should have would erase the test set out by the Supreme Court in *Reed*.") (citing, *inter alia, James*, 550 U.S. at 210 n.6, 127 S.Ct. 1586).

"Therefore, to preserve his current argument, [petitioner] was not required to argue on direct appeal that Supreme Court precedent should be overruled, particularly precedent as recent as *Sykes*." *Trujillo*, 2016 WL 7034973 at *5 (citing *U.S. v. Snead*, 2016 WL 4091548, *1–*3 (N.D. Cal. Aug. 2, 2016) and *U.S. v. Dean*, 169 F.Supp.3d 1097, 1106–08 (D. Or. 2016)).

**Accordingly, Savage has met the "cause" prong of the test for avoiding procedural default of his *Johnson*-based vagueness challenge to his Career Offender Guideline sentence.** *Accord Alvarado v. U.S.*, 2016 WL 6302517, *3 (C.D. Cal. Oct. 14, 2016) ("[I]n the wake of *Johnson*, courts in the Ninth Circuit have held that a section 2255 motion based on a *Johnson* claim is not procedurally defaulted because the claim was not 'reasonably available' prior to *Johnson*.") (citation omitted); *U.S. v. Chilton*, 2016 WL 6518665, *3 (N.D. Cal. Oct. 11, 2016) (same); *U.S. v. Santos*, 2016 WL 5661553, *3 (C.D. Cal. Sept. 9, 2016) (petitioner satisfied "cause" prong of the test for avoiding procedural default of *Johnson*-based challenge to his Career Offender Guideline residual clause sentence); *U.S. v. McGary*, 2016 WL 4126451, *2 (N.D. Cal. Aug. 3, 2016) (same).

<u>Savage Has Also Satisfied the "Prejudice" Prong of the Test for Avoiding Procedural Default</u>

██ "If a petitioner succeeds in showing cause, the prejudice prong of the test requires [him to] demonstrat[e] 'not merely that the [constitutional] errors' " leading to the putatively unlawful conviction or sentence " 'created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentence] with error of constitutional dimensions.' " *U.S. v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (emphasis in original) (quoting *Frady*, 456 U.S. at 170, 102 S.Ct. 1584).

The government argues that petitioner Savage cannot show actual prejudice because he was sentenced within the statutory maximum term of imprisonment for the instant offense of federal unarmed bank robbery: "His 169-month sentence was below the statutory maximum of twenty years imprisonment" set forth in section

2113(a). Doc 13 at 13 (citing, *inter alia*, *U.S. v. Estrada*, 2008 WL 5069083, *4 (D. Idaho July 3, 2008) ("[Petitioner] cannot show prejudice given that his sentence was not above the relevant statutory maximum, [and thus] he has procedurally defaulted on this claim.") and *Surratt v. U.S.*, 165 F.Supp.2d 946, 949 (D. Minn. 2001) (although "[p]etitioner's guidelines sentence of 324 months exceeded the 240-month statutory maximum," he still could not show prejudice as needed to avoid procedural default of his habeas challenge to that sentence because the sentencing court could have run his two 240-month sentences running consecutively per U.S.S.G. section 5G1.2(d) only to the extent necessary to reach the guideline sentence of 324 months)).

In this connection, the Court would further note that it could have imposed the maximum statutory term of imprisonment independent of the offense level that was calculated under the Guidelines, and independent of the term of imprisonment that was recommended by Guidelines for someone of petitioner's criminal history category and total adjusted offense level. This is because at the time of his sentencing in 2008, *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), had already made clear that the Guidelines were only advisory, meaning that the Guidelines recommendation on terms of imprisonment and supervised release did not strictly bind district judges.

Finally on this issue, the government relies on *Gilbert v. U.S.*, 640 F.3d 1293, 1321–22 (11th Cir. 2011), for the proposition that a convict's "claim that a sentencing guidelines provision was misapplied to him is not a constitutional claim[.]" *See* Doc 13 at 13. If the Court follows the Eleventh Circuit's view from *Gilbert*, the government says, petitioner will not be able to establish that his sentencing was

" 'infect[ed] . . . with error of constitutional dimension,' as [the Ninth Circuit's] *Braswell*, 501 F.34d at 1150, requires." Doc 13 at 13.

**The Court is not persuaded by the government's position on the prejudice prong of the procedural-default test.** Under binding precedent, a habeas petitioner in Savage's situation need not show that a constitutional violation increased the applicable statutory maximum term of imprisonment. The Supreme Court has held that an error that resulted in an increased guideline-recommended range caused cognizable prejudice to the convicted defendant even though it had not changed the applicable statutory maximum. The Supreme Court unanimously held that the petitioner there was prejudiced even by an increase of a few months in the guideline-recommended range of prison terms, because "any amount of actual jail time has Sixth Amendment significance." *Glover v. U.S.*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), *cited by U.S. v. Portillo–Mendoza*, 273 F.3d 1224, 1228 (9th Cir. 2001) (by applying aggravated-felony enhancement where it did not apply under binding case law, the district court prejudiced defendant; "if [he] had received . . . no enhancements", the Guidelines would have recommended a maximum term of 18 months in prison, whereas the four-level enhancement erroneously imposed caused the Guidelines to recommend a maximum term of 30 months).

**In *Glover*, the Supreme Court was deciding whether an increase in the Guideline-recommended term of imprisonment range constituted "prejudice" to a convicted criminal *defendant for purposes of the Strickland v. Washington standard* for ineffective assistance of counsel. Nonetheless, *Glover* also supplies the legal standard for determining prejudice for purposes of procedural de-**

fault in habeas corpus. This is because "the prejudice standard for excusing a procedural default ... is the same as the prejudice standard for establishing ineffective assistance, ...." *Hester v. Pierce*, 2016 WL 5539585, *5 (D. Del. Sept. 28, 2016) (citing *Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008)); *see also Vansickel v. White*, 166 F.3d 953, 958–59 (9th Cir. 1999) (analyzing cause and prejudice for procedural default under *Strickland* standard); *accord, e.g., Robinson v. Rozum*, 2016 WL 4762085, *10 (W.D. Pa. July 10, 2016) (citing *Mincey v. Head*, 206 F.3d 1106, 1147 (11th Cir. 2000) ("In that the prejudice [precedent] requires to overcome a procedural default is the same as the prejudice *Strickland* requires ... (in the ineffective assistance context), it follows that Mincey's ineffective[-]assistance claim must fail."), *R & R adopted*, 2016 WL 4734295 (W.D. Pa. Sept. 12, 2016); *Broughton v. Crews*, 2016 WL 4625616, *16 (S.D. Fla. Sept. 6, 2016) ("[F]or the same reasons [that] Petitioner cannot establish prejudice to excuse his procedural default, he cannot establish prejudice under *Strickland*."). *Cf. Murray*, 477 U.S. at 492, 106 S.Ct. 2639 (attorney error will not excuse procedural default of a constitutional claim unless the error amounted to ineffective assistance), *cited by Parker v. Hill*, 2010 WL 330263, *9 (D. Or. Jan. 21, 2010).

Petitioner convincingly reasons that "[t]his principle retains full force and effect post–*U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) [which held that the Sentencing Guidelines' ultimate recommendations do not bind district judges and are merely advisory], and irrespective of whether the application of the erroneous [here, partially unconstitutional] guideline was mandatory or discretionary." *See* Doc 18 (Savage Reply) at 20. This is primarily because the Supreme Court has made clear, in the post–*Booker* advisory–Guidelines era, that "the Guidelines are" nonetheless still "in a real sense the basis for the [defendant's] sentence." *See Peugh v. U.S.,* —— U.S. ——, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013) (quoting *Freeman v. U.S.*, 564 U.S. 522, 529, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (plurality opinion)[7]). The Supreme Court reasoned that on appeal, a sentence

> is reviewed for reasonableness under an abuse-of-discretion standard. *Failure to calculate the correct Guidelines range constitutes procedural error, ....* The court of appeals may, but is not required to, presume that a within–Guidelines sentence is reasonable. * * * Overall, this system "requires a court to give respectful consideration to the Guidelines," but it "permits the court to tailor the sentence in light of other statutory concerns as well."

Under 18 U.S.C. section 3553(a)(4)(A)(ii), district courts are instructed to apply the Sentencing Guidelines ... that are "in effect on the date the defendant is sentenced." * * *

* * *

The post–*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that *sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.* As we have described, "district courts must *begin* their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."

---

**7.** Justice Sotomayor provided the fifth vote for the judgment but not the plurality's rationale. She concurred separately in the judgment, explaining, "I agree with the plurality that petitioner William Freeman is eligible for sentence reduction under 18 U.S.C. section 3582(c)(2), but I differ as to the reason why." *Freeman*, 564 U.S. at 534–544, 131 S.Ct. at 2695–2700 (Sotomayor, J., concurring in judgment).

\* \* \* A district court contemplating a non-Guidelines sentence "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." \* \* \*

These requirements mean that "in the usual sentencing, ... the judge will use the Guidelines as the starting point in the analysis and impose a sentence within the range." *Freeman v. U.S.*, 564 U.S. 522, 131 S.Ct. 2685, 2692, 180 L.Ed.2d 519 (2011) (plurality opinion). Even if the sentencing judge sees a reason to vary from the Guidelines, "if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then *the Guidelines are in a real sense the basis for the sentence. Ibid.* \* \* \*

*Peugh*, 133 S.Ct. at 2080–81 (internal citations and n.2 omitted) and 2083–84 (other internal citations omitted) (italics in *Peugh*, boldface added); *see also Romero v. Warden*, 550 Fed.Appx. 72, 73 (3d Cir. 2014) (per curiam) (*Peugh* held that a "retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation") (citing *Peugh*, 133 S.Ct. at 2084).

The Supreme Court has further emphasized that even after *Booker* rendered the Guidelines advisory, district courts in the "vast majority of cases [have] imposed either within–Guidelines sentences or sentences that depart downward from the Guidelines [only] on the Government's motion." *Peugh*, 133 S.Ct. at 2084 (cites omitted). **Most significantly, the Supreme Court emphasizes that "the Sentencing Commission's data indicate that when a Guidelines [recommended] range [for term of imprisonment] moves up or down, offenders' sentences move with it."** *Peugh*, 133 S.Ct. at 2084 (citations omitted).[8]

**More recently, the Supreme Court again reaffirmed the Sentencing Guidelines' continuing importance and the substantial weight that a sentencing judge must accord the Guidelines and their recommendations. In *Molina–Martinez v. U.S.*, —— U.S. ——, 136 S.Ct. 1338, 1343, 194 L.Ed.2d 444 (2016), the** petitioner had been sentenced to 77 months in federal prison, the minimum recommended term for someone with his calculated offense level of 21. On appeal, Molina argued that the district court had erred in calculating his criminal history points, resulting in the applicable of a higher Guidelines-recommended range, *see Molina*, 136 S.Ct. at 1344. The government argued that there was no prejudice because the correct Guideline-recommended

8. This is true even in cases where the prosecution and the defendant jointly recommend a precise term of imprisonment based on their assessment of the statutory sentencing factors. The authority and obligation to determine an appropriate sentence remains solely with the district judge in such cases, and the judge has discretion to reject the parties' recommendation and impose a different term of imprisonment based on the judge's application of the Sentencing Guidelines and assessment of the statutory sentencing factors.

The Court thus respectfully disagrees with *U.S. v. Mason*, 2016 WL 6803098, \*4 (E.D. Wash. Nov. 6, 2016) ("The parties' plea agreement contained language explicitly recognizing the open question as to whether Mason qualified as a career offender. Regardless of the court's ultimate calculation, the parties agreed to *recommend* that the court vary upward or downward to reach a 144-month sentence based upon the [18 U.S.C.] section 3553(a) factors. This was not the type of case where, 'when a Guidelines range moves up or down, [an] offender['s] sentence moves with it. Accordingly, this case does not present the circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.") (citing *Peugh*, —— U.S. ——, 133 S.Ct. 2072, 186 L.Ed.2d 84).

range was 70–87 months and petitioner's sentence fell squarely in the middle of that range, *see Molina*, 136 S.Ct. at 1344. The Supreme Court rejected the government's argument. It noted that the Guidelines are a "lodestar" for sentencing even where the district judge departs or varies from their recommendations, explaining as follows:

> From the centrality of the Guidelines in the sentencing process it must follow that, when a defendant shows that the district court used an incorrect range, he should not be barred from relief simply because there is no other evidence that the sentencing outcome would have been different had the correct range been used.

> In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome [as required to show prejudice].

*Molina*, 136 S.Ct. at 1346. Under such circumstances, the petitioner will be unable to show prejudice only if the government establishes that the record clearly shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range", *see id.* at 1346–47.

**Guided heavily by the Supreme Court's characterization of the Guidelines' post–*Booker* role in sentencing, *see Molina*, —— U.S. ——, 136 S.Ct. 1338, 194 L.Ed.2d 444, and *Peugh*, 133 S.Ct. at 2080–84, the Court concludes that when** analyzing prejudice from a constitutional error in sentencing, "the discretionary nature of the Guidelines is inconsequential because they nonetheless are the lodestone of sentencing and have considerable influence . . . . The Guidelines accordingly have a real and pervasive and only quasi-advisory effect on sentencing, bringing them closer to a statute which fixes sentences

than a sort of suggested opinion." *In re Patrick*, 833 F.3d 584, 589 (6th Cir. 2016); *accord In re Hubbard*, 825 F.3d 225, 235 (4th Cir. 2016) ("[A]lthough available sentences are technically controlled by statute [alone], the Sentencing Guidelines hardly represent a mere suggestion to courts about the proper sentences [that] defendants should receive.").

**Indeed, "the Ninth Circuit has long held that, on direct review, miscalculation of the Guidelines range constitutes plain error that affects a defendant's substantial rights."** *U.S. v. Chilton*, 2016 WL 6518665, *3 (N.D. Cal. Oct. 11, 2016) (citing *U.S. v. Doe*, 705 F.3d 1134, 1158 (9th Cir. 2013)); *see also Waterman*, 2016 WL 5921258 at *4 (petitioner would be prejudiced if his vagueness challenge to a sentencing guideline were defaulted, because Circuit has held that the decision to apply an inapplicable Guideline " 'derailed the sentencing proceedings before [they] even beg[i]n' ") (quoting *U.S. v. Vargem*, 747 F.3d 724, 728–29 (9th Cir. 2014)); *Kinman*, 2016 WL 6124456, *4 (petitioner satisfied prejudice prong of procedural-default standard for *Johnson* vagueness challenge to career-offender sentence, court noted that our "Circuit has long held that, on direct review, miscalculation of the Guidelines' range constitutes plain error that affects a defendant's substantial rights.") (citing *U.S. v. Bonilla–Guizar*, 729 F.3d 1179, 1188 (9th Cir. 2013)).

**■ With the Supreme Court's characterization of the Guidelines' import in mind, the Court concludes that petitioner Savage has shown that he would suffer the requisite prejudice if he were denied consideration of the merits of the instant habeas claim on the ground of procedural default.** At the time of sentencing in 2008, this Court followed the Probation Office's recommendation (PSR ¶¶ 28 and 81) to apply the Career Offender

Guideline, which recommended a term of imprisonment between 151 months and 188 months inclusive. This Court imposed a sentence of 169 months, in the middle of the Career Offender recommended range. It is undisputed that if the Career Offender Guideline did not apply, the Guidelines would have recommended a term of imprisonment of only 46–57 months.

In 2008, this Court imposed a term of imprisonment that was in the middle of the range recommended by the Career Offender Guideline. This does not necessarily mean that the Court would find it appropriate to impose a term in the middle of some other guideline-recommended range if it concluded that the Career Offender Guideline did not apply. It bears noting, however, that a sentence in the middle of the *non*-career-offender recommended range would be 51 or 52 months—less time than petitioner Savage has already served in federal prison pursuant to the instant unarmed bank robbery conviction. Even a sentence at the *high* end of the *non*-career-offender recommended range, 57 months, would be less time than Savage has already served. In other words, a substantial departure upward from the non-career-offender recommended range would be needed just to arrive at the term that Savage has already served in federal prison on this conviction.

**Although this Court theoretically would be free to re-impose the same 159-month sentence in the face of a Guideline recommendation of only 46–57, the variance from the Guideline recommendation would be drastically larger.** Thus, for purposes of procedural-default prejudice analysis, the Court cannot say that it is reasonably probable that Savage would receive a sentence no shorter than the one he received when the Guidelines recommended a whopping 151-188 months. *Accord Jefferson*, 2016 WL 6496456 at *4

(noting that Guidelines recommended 63–78 months with application of U.S.S.G. 2K2.1(a)(4) enhancement but would have recommended only 33–41 months without it, court stated, "Relying in part on the Guidelines, the Court sentenced Mr. Jefferson to 54 months in prison, a slight variance below the then applicable Guidelines" and "[w]hile the imposed sentence falls outside the as-calculated range, it is significantly higher than the range applicable to the correct offense level. * * * *Had the proper Guidelines range been applied, the 54[-]month sentence would have been a substantial upward variance rather than a slight downward variance.* Accordingly, Mr. Jefferson has demonstrated prejudice.") (emphasis added).

**For purposes of procedural-default analysis, then, Savage has shown that it is reasonably probable that this Court would have imposed a lower term of imprisonment if the Guidelines had recommended 46–57 months than it imposed when the Guidelines seemed to recommend 151–188 months.** *See U.S. v. Santos*, 2016 WL 5661553, *3–*4 (C.D. Cal. Sept. 9, 2016) (concluding that habeas petitioner had shown prejudice sufficient to avoid procedural default of his *Johnson*-based vagueness challenge to his Career Offender Guideline sentence because the application of that guideline had increased the recommended term of imprisonment from 51–63 months to 92–115 months, and even with a downward variance he had been sentenced to 84 months); *Alvarado*, 2016 WL 6302517 at *4 (rejecting contention that petitioner's vagueness challenge to Career Offender Guideline's residual clause was defaulted, court stated, "Petitioner contends that, at the time of his sentencing, his non-career offender range was 77–96 months. Because the Court imposed a sentence of 151 months, the Court would find that, although Petitioner's sentence was below the statutory maximum,

Petitioner has established prejudice."). *Accord U.S. v. Kennedy*, 218 F.Supp.3d at 1109, 2016 WL 6520524, *3 (E.D. Cal. Nov. 3, 2016) ("In sentencing petitioner to 63 months in prison, this Court adopted ... Probation['s] ... findings and recommendation that 63 to 78 months was the appropriate sentencing range under the Guidelines, .... Had Petitioner not been eligible for an enhancement under section 2K2.1(a)(3), the applicable Guidelines range would have been 51 to 63 months. U.S.S.G. section 2K2.1(a)(4). Therefore, it is highly probable that Petitioner's sentence would have been lower had this Court not sentenced him under the Guideline's residual clause.").

**Moreover, Ninth Circuit district judges have found prejudice, for procedural-default purposes, even where the petitioner's existing sentence is still within the *new*, lower Guideline-recommended range.** *See, e.g., Benard*, 2016 WL 5393939 at *5 ("[T]he Court disagrees with the government's argument that defendant should not be resentenced because the 52-month sentence imposed falls within the new range proposed by defendant. * * * Here, although the sentence of 52 months was a downward departure from the 70–87 months in the U.S.S.G. range, the U.S.S.G. calculation 'worked to [defendant's] actual and substantial disadvantage.") (relying on *U.S. v. Bonilla–Guizar*, 631 F.3d 1028, 1030 (9th Cir. 2011)); *U.S. v. Espinoza*, 2016 WL 5661546, *2–*3 (C.D. Cal. Sept. 21, 2016), *appeal filed*, No. 16–50395 (9th Cir. Oct. 25, 2016).

This does *not* mean that petitioner would be automatically or presumptively "entitled" to a reduction of his ultimate sentence if he ultimately wins habeas relief here. *Cf. Welch*, 136 S.Ct. at 1268 ("It may well be that the Court of Appeals on remand will determine on other grounds that the district court was correct to deny

Welch's motion to amend his sentence. For instance, the parties continue to dispute whether Welch's strong-arm robbery conviction qualifies as a violent felony under the elements clause of the Act, which would make Welch eligible for a 15-year sentence regardless of *Johnson*. On the present record, however, and in light of today's holding that *Johnson* is retroactive to cases on collateral review, reasonable jurists at least could debate whether Welch is entitled to relief."). The Court answers only the narrower question that it must at this stage: petitioner has shown prejudice sufficient to have the merits of his claim heard despite its arguable default.

**Having concluded that Savage's challenge to his Guideline-enhanced sentence is neither barred by his plea nor defaulted, the Court next considers the government's argument that it is time-barred.**

3. Savage's *Johnson* Claim is Not Time–Barred under AEDPA, Because *Johnson*'s Holding Should Be Applied Retroactively to Cases on Collateral Review

**The Court will reject the government's contention that Savage's habeas claim is time-barred under AEDPA.** First, 28 U.S.C. section 2255(f) applies a one-year limitations period to federal prisoners' habeas claims. Pursuant to section 2255(f), the one-year period starts running from the latest of the following four events: (1) the date on which the judgment became final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the US is removed; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court

and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim presented could have been discovered through due diligence.

Both sides agreed that petitioner's habeas claim would be time-barred if the one-year period began running when his instant unarmed bank robbery conviction became final, back in 2009. Accordingly, petitioner must invoke section 2255(f)(2), (3), or (4) to show that the claim accrued less than a year before he filed it.

■ Petitioner does not claim that unlawful governmental action prevented him from filing this claim sooner, so section 2255(f)(2) is of no avail to him. Nor does petitioner claim that the claim rests on facts that he only discovered, despite his due diligence, less than a year before he filed this petition. Thus, section 2255(f)(4) is inapplicable. **Petitioner is left to invoke section 2255(f)(3) to show that his claim accrued less than a year before he filed this petition, when the Supreme Court issued *Johnson v. U.S.* in 2015.**

**The government argues that petitioner's challenges to his sentence enhancement under the Career Offender Guideline are untimely because *Johnson* does not apply retroactively to Guidelines challenges on collateral review,** only to *ACCA*-enhanced sentence challenges on collateral review, Doc 13 at 14.

The government correctly identifies the test for determining whether a constitutional holding by the Supreme Court should be applies retroactively to cases on collateral review, i.e., cases where direct appeal has concluded or the time for direct appeal has elapsed. **Under *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality op.), the first question is whether the holding in question announced a truly "new" rule.**

The parties here agree that the Supreme Court announced a new rule in *Johnson v. U.S.* in 2015. *See* Doc 13 (Gov Opp) at 17 n.4 ("The rule is ... new, in that (1) no prior precedent dictated the conclusion that the Guidelines' [sic] residual clause is unconstitutionally vague, ...; and (2) no prior precedent dictated the conclusion that the Sentencing Guidelines are even amenable to vagueness challenges."); *see also U.S. v. Rios*, 201 F.Supp.3d 1266, 2016 WL 4472996, *3 (E.D. Wash. Aug. 12, 2016) ("Both parties agree that *Johnson* announced a new rule[,] and for good reason, [as] there is relatively little question that *Johnson* did so.") (quoting *Teague*, 489 U.S. at 301, 109 S.Ct. 1060, for proposition that "a case announces a new rule if the result was not *dictated* by current precedent existing at the time the defendant's conviction became final.").

■ **Per *Teague*, 489 U.S. at 311, 109 S.Ct. 1060, the second retroactivity criterion is whether the new rule is procedural or substantive.** *See* Doc 13 (Gov Opp) at 15–17 (discussing precedent that defines "substantive" and "procedural" in this context and giving examples of rules the Supreme Court has found to fall into each category). **If the new rule is substantive, it will generally apply retroactively** to cases on collateral review. *See Santos*, 2016 WL 5661533 at *5 (citing *Welch*, —— U.S. ——, 136 S.Ct. at 1264).

**If the new rule is procedural, it will apply retroactively only if it is a one of the "watershed rules of criminal procedure**, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, ...." *See Santos*, 2016 WL 5661533 at *5 (citing *Welch*, —— U.S. ——, 136 S.Ct. at 1264).

The Court would note that "a new rule need not alter the statutory mini-

mum or maximum to be substantive" for *Teague* purposes. *Rios*, 201 F.Supp.3d at 1273, 2016 WL 4472996 at *4. "The Supreme Court confirmed this view in *Montgomery v. Louisiana* [,]" —— U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). *Montgomery* held that the new rule announced in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), that juveniles could not be sentenced to life without parole without a hearing to account for their youth, was substantive and therefore retroactive. *See Montgomery*, 136 S.Ct. at 732. Although *Miller* had no impact on the statutory maximum or minimum sentence—courts could still find that a juvenile offender was "permanent[ly] incorrigib[le]" and impose life imprisonment without parole, *Montgomery*, 136 S.Ct. at 734—the Supreme Court found *Miller*'s holding to be retroactive because it "rendered a certain penalty unconstitutionally excessive for a category of offenders", *id.* at 736. Thus, *"Montgomery* makes clear that new rules do not have to alter the statutory maximum or minimum sentence to be substantive and retroactive on collateral review." *Rios*, 2016 WL 4472996 at *4.

The government contends that the new rule announced in *Johnson* was merely procedural and was not a watershed rule and so it cannot be applied retroactively, *see* Doc 13 at 17–20. Petitioner Savage states that he "does not contend that *Johnson*, if procedural, is a watershed rule." Doc 18 (Savage Reply) at 12 n.5. **Accordingly, in order to have *Johnson* applied retroactively to his claim, petitioner must show that the new rule announced in *Johnson* was substantive. As explained below, petitioner succeeds in doing so.**

The Fifth, Eight, and Eleventh Circuits have held that the new rule in *Johnson* was merely procedural and could not be applied retroactively to vagueness challenges to the residual clause of the Career Offender Guideline (as opposed to challenges to the residual clause of the ACCA statute at issue in *Johnson*). *See* Doc 13 at 21 at 20–22; *In re Williams*, 806 F.3d 322 (5th Cir. 2015); *In re Sapp*, 827 F.3d 1334 (11th Cir. 2016).

On the other side of the ledger, the Second, Fourth, Sixth, Seventh, and Tenth Circuits have held that the new rule announced in *Johnson* was substantive and applies retroactively to collateral review of *Guideline*-enhanced sentences (rather than only ACCA–enhanced sentences). *See Blow v. U.S.*, 829 F.3d 170, 172 (2d Cir. 2016); *In re Hubbard*, 825 F.3d 225 (4th Cir. June 8, 2016); *Patrick*, 833 F.3d 584 (6th Cir. 2016); *In re Hurlburt*, 835 F.3d 715 (7th Cir. 2016) (*en banc*); *In re Encinias*, 821 F.3d 1224, 1226 n.4 (10th Cir. 2016).

**Our Circuit has not yet decided whether *Johnson* applies retroactively to Guideline-enhancement cases on collateral review**, *see Torres*, 828 F.3d at 1125 ("[W]e assume without deciding that *Johnson*'s holding nullifies section 4B1.2(a)(2)'s identically worded residual clause."), **and it recently stated that "[t]here are substantial arguments on both sides of" this retroactivity issue.** *McCandless*, 841 F.3d at 821. To date, "[N]o court of appeals has held that the extension of *Johnson* to the ... Sentencing Guidelines is to be applied retroactively." *Jordan v. U.S.*, 2016 WL 6634854, *3 (C.D. Ill. Nov. 9, 2016). As a sister court stated,

the fact that the Supreme Court made *Johnson* retroactive [to collateral review of ACCA statutorily-enhanced sentences], *see Welch v. U.S.*, 136 S.Ct. at 1268, leads this Court to the conclusion that a holding in *Beckles* that the guidelines are subject to vagueness challenges, which will result in the residual

clause of the career offender guideline being deemed unconstitutionally vague, will also be made retroactive, . . . .

 Likewise, this Court is persuaded by the petitioner's argument that *Johnson* should be applied retroactively to cases on collateral review of Career Offender Guideline-enhanced sentences. In *Welch,* the Supreme Court explained the difference between substantive and procedural rules as follows:

A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. Procedural rules, by contrast, regulate only the manner of determining the defendant's culpability. Such rules alter the range of permissible methods for determining whether a defendant's conduct is punishable. They do not produce a protected class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.

*Welch,* —— U.S. ——, 136 S.Ct. at 1264–65, 194 L.Ed.2d 387 (paragraph break added) (citations and internal quotation marks omitted).

*Welch,* which dealt with collateral attacks on ACCA sentences, then proceeded to hold that

[u]nder this framework, the rule announced in *Johnson* is substantive. By striking down the residual clause [of the ACCA] as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering "the range of conduct or the class of

persons that the [Act] punishes. *Schriro, supra,* at 353, 124 S.Ct. 2519.

Before *Johnson,* the Act applied to any person who possessed a firearm after three violent felony conviction, even if one or more of those convictions fell under [the definition of a violent felony by virtue of[ the residual clause. An offender in that situation faced 15 years to life in prison.

After *Johnson,* the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause [of the ACCA] is invalid under *Johnson,* so it can no longer mandate or authorize any sentence. *Johnson,* establishes, in other words, that "even the use of impeccable factfinding procedures could not legitimate" a sentence based on that clause. *U.S. v. U.S. Coin & Currency,* 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). It follows that *Johnson* is a substantive decision.

By the same logic, *Johnson* is not a procedural decision. *Johnson* had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentence under the Armed Career Criminal Act. *See Schriro,* 542 U.S. at 353, 124 S.Ct. 2519. It did not, for example, "allocate decisionmaking authority" between judge and jury, *ibid.* or regulate the evidence that the court could consider in making its decision, *see Whorton v. Bockting,* 549 U.S. 406, 413–414, 417, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007); *Mackey, supra,* at 700–701, . . . . Unlike those cases, *Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied. *Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in [ACCA–en-

hanced sentence] cases on collateral review.

*Welch,* —— U.S. ——, 136 S.Ct. at 1265 (¶ breaks added). *See, e.g., McNeil v. U.S.,* 2016 WL 6634901, *4 (E.D.N.C. Nov. 8, 2016) (noting Fourth Circuit holding that NC common-law robbery did not categorically constitute a violent felony under the ACCA, court stated, "In *Johnson* ..., the Supreme Court invalidated the [ACCA] residual clause. Moreover, *Johnson* applies retroactively on collateral review. *See Welch* .... Therefore, McNeil's common law robbery convictions cannot serve as predicate violent felonies under ACCA, ....").

Because *Johnson* applies retroactively to collateral vagueness attacks on enhanced sentences, petitioner had to file the instant *Johnson*-based claim within a year of the issuance of *Johnson*. "*Johnson* was decided on June 26, 2015, and thus the deadline for making a *Johnson*-based motion was June 26, 2016." *Hernandez v. U.S.,* 2016 WL 6638013, *2 (W.D. Tex. Nov. 9, 2016). Savage timely filed the instant petition on June 6, 2016.

In sum, petitioner Savage's Due Process challenge to the Career Offender Guideline residual clause is not barred by his plea agreement's waiver of collateral-attack rights, is not barred by procedural default, and is not time-barred. Consequently, Savage is entitled to a ruling on the merits of that Due Process claim.

## ANALYSIS OF THE TWO "GENERAL" MERITS QUESTIONS

1. *Johnson* Upheld a Vagueness Challenge to a *Statutorily* Enhanced Sentence, But Its Reasoning Likewise Applies to Career–Offender *Guideline*–Enhanced Sentences

"A large majority of federal appellate circuits have held or assumed that *Johnson* ...", which nominally applied only to sentences enhanced under the residual clause of the ACCA statute, also "extends to the US Sentencing Guidelines." *Jordan v. U.S.,* 2016 WL 6634854, *3 (C.D. Ill. Nov. 9, 2016) (citing *Hurlburt,* 835 F.3d at 725 (discussing cases)). Only one circuit has held to the contrary, and the Supreme Court granted certiorari to review that holding in *Beckles v. U.S.,* S.Ct. No. 15–8544. *See also U.S. v. Dandridge,* 2016 WL 6638019, *2 (W.D. Va. Nov. 8, 2016) ("While there are differing opinions on this issue, I find that *Johnson* is not controlling. [T]he Guidelines, 'whether advisory or mandatory, cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to limit and assist the district judge's discretion.") (n.3 omitted) (citing *In re Anderson,* 829 F.3d 1290, 1292 (11th Cir. 2016)).

■■■ Absent any binding Ninth Circuit precedent, this Court agrees with the well-reasoned determination of this issue in *U.S. v. Pawlak,* 822 F.3d 902 (6th Cir. 2016). *Pawlak* framed the issue as follows:

Since *Johnson*, federal courts have grappled with the unresolved question of whether the Guidelines' residual clause is also unconstitutionally vague. The text of the two residual clauses is the same, *compare* 18 U.S.C. § 924(e)(2)(B)(ii) *with* U.S.S.G. § 4B1.2(a)(2), and we interpret them identically, ....

The principal legal argument against applying *Johnson* to the Guidelines is not that their meanings are distinguishable but that the Guidelines are advisory, as opposed to "statutes fixing sentences," 135 S.Ct. at 2557, and therefore outside the reach of the vagueness doctrine. Given that the residual clauses [of the Guideline and the ACCA] are identical, the only reason *Johnson* would not compel the same result is if the Guidelines were immune from vagueness challenges.

*Pawlak*, 822 F.3d at 905 (paragraph break added). **The *Pawlak* panel goes on to explain cogently why the Sentencing Guidelines should *not* be treated as immune from Due Process vagueness challenges:**

> In *Peugh v. U.S.*, the Supreme Court held that the Guidelines are subject to constitutional challenge "notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range." —— U.S. ——, 133 S.Ct. 2072, 2082, 186 L.Ed.2d 84 (2013). * * *
>
> * * *
>
> Although the Guidelines are not mandatory, the Supreme Court has emphasized that they have considerable influence on sentencing determinations because of the procedures district courts must follow in imposing sentences. * * *
>
> "These requirements mean that '[i]n the usual sentencing, ... the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.' Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain his decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*'" *Id.* (quoting *Freeman*, 564 U.S. 522, 131 S.Ct. 2685, 2692, .... * * *
>
> In other words, "the Guidelines are the mandatory starting point for a sentencing determination; a district court can be reversed for failing to correctly apply them despite the ability to later deviate from the recommended range." *U.S. v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015) (declaring the Guideline['s] residual clause unconstitutionally vague); ....
> * * *
>
> In effect, the Sentencing Guidelines do not just *guide* or *assist* judges as much

as they *direct* judges to sentences deemed appropriate by policymakers in certain types of cases.

*Pawlak*, 822 F.3d at 905–906 (other internal quote marks & citations omitted, ¶ breaks added).

As *Pawlak* explains, it would be inconsistent with *Peugh* if courts refused to subject the Guidelines to Due Process challenges when they are already subject to other types of constitutional challenge. Moreover, "*Peugh* reflects the Supreme Court's judgment that the Guidelines are subject to constitutional challenges because the Guidelines are the mandatory starting point for sentencing determinations and district courts can be reversed for failing to correctly apply them despite the judge's discretion to deviate from the recommended range." *Pawlak*, 822 F.3d at 906 (citing *Peugh*, 133 S.Ct. at 2083, and *Madrid*, 805 F.3d at 1211).

**Although *Peugh* was an Ex Post Facto Clause case, "[t]he Supreme Court's reasoning in *Peugh* rests on the very same principles of fair notice and avoiding arbitrary enforcement underlying the doctrine of due process."** *Pawlak*, 822 F.3d at 906 (quoting, *inter alia*, *Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), for proposition that the Founding Fathers included the Ex Post Facto Clause in the Constitution both to restrain vindictive arbitrary legislation and to ensure "that legislative enactments 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed'") (quoting *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981))). This Court likewise concludes "that it would be erroneous after *Peugh* to view the Guidelines as so distinguishable from 'statutes fixing sentences,'" *Pawlak*, 822 F.3d at 907 (quoting *Johnson*, 135 S.Ct. at 2557), i.e., to treat the Guidelines as "immune from

vagueness attacks but not other constitutional attacks", like the Ex Post Facto attack sustained by *Johnson*. After all,

> * * * Given the Supreme Court's emphasis on the role of the Guidelines as the legal framework of sentencing, it would be incongruous for us to conclude that these constitutional concerns of notice and arbitrary enforcement are triggered only if a vague provision also creates a sufficient risk of a higher sentence.
>
> * * * Post–*Johnson* and *Peugh*, the fact that the Guidelines are not mandatory is a distinction without a difference. In our view, *Johnson*'s rationale applies with equal force to the [Career Offender] Guideline[']s residual clause.

*Pawlak*, 822 F.3d at 907. This is because, although the Guidelines' advisory nature means that

> a criminal defendant has no 'expectation subject to due process protection ... that he will receive a sentence within the presumptively applicable Guidelines range, the Guidelines continued role as basis ... for a defendant's ultimate sentence preserves his due process expectation that his sentence-enhancing classification as a career offender will not be subject to the "unavoidable uncertainty and arbitrariness of adjudication under the residual clause," *Johnson*, 135 S.Ct. at 2562. Indeed, the invocation of "so shapeless a provision" as the residual clause to sentence a defendant to a significantly higher sentence, *id.* at 2560, violates due process.

*U.S. v. Ramirez*, 189 F.Supp.3d 290, 296–97, 2016 WL 3014646, *4 (D. Mass. May

24, 2016); *accord U.S. v. Dean*, 169 F.Supp.3d 1097, 1107–08 (D. Or. 2016) ("This Court has held that ACCA's residual clause and the Guideline's residual clause must be interpreted in the same way and have applied decisions interpreting the two provisions interchangeably. * * * The advisory Guidelines also appear subject to [constitutional] vagueness challenges.").

■ Having determined that the Guidelines are subject to vagueness challenges, this Court consequently strikes the residual clause of the Career Offender Guideline as unconstitutionally vague for the same reasons that the Supreme Court struck down the identically worded ACCA residual clause in *Johnson*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569. *Accord Pawlak*, 822 F.3d at 908–911; *Madrid*, 805 F.3d at 1210 ("[I]t stretches credulity to say that we can apply the residual clause of the Guidelines in a way that is constitutional, when courts cannot do so in the context of the ACCA."); *U.S. v. Townsend*, 638 Fed. Appx. 172, 177–78 with n.14 (3d Cir. 2015), *appeal on other grounds after new sentencing*, No. 16–1577, 664 Fed.Appx. 202, 2016 WL 6804917 (3d Cir. Nov. 17, 2016).[9]

2. **Welch Held that Johnson Applies Retroactively to Collateral Review of ACCA–Enhanced Sentences, and Johnson Likewise Should Apply Retroactively to Collateral Review of Career–Offender Guideline–Enhanced Sentences**

■ The government contends that even if *Johnson* applies to *direct* appellate

---

9. The Court further notes that "a vague guideline can wreak harm on a defendant even before he is <u>convicted</u> of any crime." *U.S. v. Matchett*, 837 F.3d 1118, 1137 (11th Cir. 2016) (J. Wilson, joined by J. Jill Pryor, dissenting from denial of rehearing en banc) (emphasis in original). As the Supreme Court has stated, "a defendant charged with an increased punishment for his crime is likely to

feel enhanced pressure to plead guilty. This pressure does not disappear simply because the Guidelines range is advisory; the defendant will be aware that the range is intended to, and usually does, exert controlling influence on the sentence that the court will impose." *Peugh*, —— U.S. ——, 133 S.Ct. at 2085 (plurality opinion).

review of Career–Offender–Guideline-enhanced sentences, it should not apply retroactively to *collateral* review of Career–Offender–Guideline-enhanced sentences. Specifically, the government argues that *Welch*'s decision making *Johnson* retroactive on collateral review of *ACCA*-enhanced sentences, should be confined to the ACCA context, not extended to collateral review of *Guideline*-enhanced sentences.

In the government's view, "[t]he function of the *Johnson* rule (that the residual clause [of the ACCA statute] is unconstitutionally vague) is markedly different in the Guidelines context than in a case involving the erroneous imposition of a sentence under the ACCA." Doc 13 (Gov Opp) at 18. The government reasons:

> In the ACCA context, sentencing a defendant based on the residual clause functions to raise the statutory minimum and maximum terms of imprisonment so that the defendant is exposed to a wholly new and unauthorized range of sentencing options. *Welch*, 136 S.Ct. at 1265. An ACCA error results in a sentence that is "not authorized by substantive law." *Id.* at 1266. That error directly implicates the separation[-]of[-]powers principle that federal courts may not impose sentences that are not authorized by Congress. *See id.* at 1268 ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.").
>
> In the Guidelines context, by contrast, sentencing a defendant in light of an erroneous application of section 4B1.1 does not alter the statutory boundaries for sentencing set by Congress for the crime. A rule invalidating the crime-of-violence residual clause in the Career Offender Guideline would establish that a defendant's Guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. An erroneous application of the Career Offender Guideline results in incorrect advice to the sentencing court, but does not authorize an otherwise-inapplicable statutory mandatory minimum sentence or produce a higher-than-otherwise-applicable statutory maximum, as is true under the ACCA with respect to comparable error. *See Mistretta v. US*, 488 U.S. 361, 396, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (Sentencing Guidelines do not usurp the legislative responsibility for establishing minimum and maximum penalties for every crime, but instead operate "within the broad limits established by Congress"). It therefore relates to the "manner of determining" the defendant's sentence, *Welch*, 136 S.Ct. at 1265, which is the function of a procedural rather than a substantive rule.

Doc 13 (Gov Opp) at 18–19 (last paragraph break added).

**The government concedes only in general terms that a Guidelines "range exerts an influence on the ultimate sentence," Doc 13 (Gov Opp at 20, citing *Peugh*, 133 S.Ct. at 2081–84), but again emphasizes that any constitutional invalidation of the Career Offender Guideline's residual clause "does not change the authorized range of punishment."** *See* Doc 13 at 20 (citing *Molina*, 136 S.Ct. at 1346, for proposition that Guidelines merely "inform and instruct the district court's determination of an appropriate sentence"); *see also* Doc 13 (Gov Opp) at 21–22 (discussing and relying on *In re Griffin*, 823 F.3d 1350 (11th Cir. 2016), and *In re Rivero*, 797 F.3d 986 (11th Cir. 2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 2408, 195 L.Ed.2d 794 (2016) (both denying leave to file a second-or-successive habeas petition that would have collaterally attacked a Career–Offender–Guideline residual-

clause-enhanced sentence as void for vagueness by extension from *Johnson*).

**The government inappropriately downplays what the Supreme Court said in *Peugh* in 2013.** The government unduly minimizes the degree to which the Guidelines' "recommendations" substantially influence and determine the sentences imposed. In *Peugh*, the Supreme Court made clear that even in the post–*Booker* advisory-Guidelines era, "the Guidelines are" still "in a real sense the basis for the ... sentence," *Peugh*, 133 S.Ct. at 2083, and **the Supreme Court has already subjected the Guidelines to other types of constitutional review.** *See Peugh*, —— U.S. ——, 133 S.Ct. 2072, 186 L.Ed.2d 84 (subjecting Sentencing Guideline to Ex Post Facto Clause scrutiny); *Mistretta*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (rejecting on the merits a contention that the Guidelines as a whole unconstitutionally delegated excessive legislative power to the Commission and violated the separation of powers).

*See also Stinson v. U.S.*, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (Guidelines commentary, like an agency's interpretation of its own regulations, is entitled to controlling weight as long only so long as it "does not violate the Constitution or a federal statute"); *cf. Wade v. U.S.*, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (holding that government's refusal to file a substantial-assistance departure motion under U.S.S.G. 5K1.1 is subject to judicial review for unconstitutional motive). "Nothing in *Johnson* suggests that it overrules [*Mistretta*, *Wade*, and *Stinson*] or limits the vagueness doctrine to criminal statutes. In light of this history, [there is] no legal basis for concluding that the Guidelines are uniquely immune to vagueness challenges." *Pawlak*, 822 F.3d at 907.

 **Penultimately, *Reina–Rodriguez v. U.S.*, 655 F.3d 1182 (9th Cir. 2011) ("*Reina*"), cited by the petitioner here, also tends to support extension of *Welch*'s retroactivity holding from the statutory enhancement context to the Guidelines enhancement context.** In *Reina*, the Ninth Circuit considered whether to retroactively apply *U.S. v. Grisel*, 488 F.3d 844 (9th Cir. 2007), to cases on collateral review. In *Grisel*, the Circuit had held that Oregon's second-degree burglary statute was not categorically equivalent to "generic burglary" under the ACCA statute.[10]

---

10. In 2008, the Ninth Circuit "adopted the Fifth Circuit's definition of generic robbery: 'aggravated larceny, containing the elements of misappropriation of property under circumstances involving immediate danger to the person.'" *U.S. v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2016) (citing *Becerril–Lopez*, 541 F.3d at 891, which followed *U.S. v. Santiesteban–Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006)). *Accord U.S. v. House*, 825 F.3d 381, 387 (8th Cir. 2016) (citing *Becerril–Lopez*, 541 F.3d at 891, and 3 W. LaFave, <u>Substantive Criminal Law</u> section 20.3(e) (2d ed. 2003)), *reh'g & reh'g en banc denied* (8th Cir. Aug. 19, 2016).

In turn, "we equate larceny with generic theft for purposes of a categorical analysis." *U.S. v. Velasquez–Bosque*, 601 F.3d 955, 960 (9th Cir. 2010) (citing *U.S. v. Corona–Sanchez*, 291 F.3d 1201, 1204 (9th Cir. 2002) (en banc) ("The contemporary crime of 'theft' stems from the common[-]law crime of larceny."), *superseded on other grounds by U.S.S.G. § 2L1.2* (internal quotation marks and alterations omitted)).

"Generic theft is 'a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.'" *Velasquez–Bosque*, 601 F.3d at 960 (quoting *Corona–Sanchez*, 291 F.3d at 1205 (en banc), and citing, *inter alia*, *U.S. v. Vidal*, 504 F.3d 1072, 1077 (9th Cir. 2007) (en banc)). "This definition of generic theft has been adopted by the Supreme Court, ...." *Velasquez–Bosque*, 601 F.3d at 960 (citing *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 189, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)).

*Grisel* involved a sentencing enhancement under the ACCA statute, not a Guidelines enhancement like our petitioner's sentence. On habeas review, Reina challenged his sixteen-level enhancement pursuant to U.S.S.G. 2L1.2(b)(1)(A)(iii), which was based on the determination that his residential burglary was a crime of violence under the Career Offender Guideline, U.S.S.G. section 4B1.2(a)(2).

Reina argued that because his sentence had been enhanced by application of the Career Offender Guideline—functionally identical to the ACCA's definition of violent felony—after *Grisel* his second-degree residential burglary conviction no longer qualified as a crime of violence, notwithstanding that his conviction became final before the Circuit issued *Grisel*.

*Without distinguishing between Grisel's application to the ACCA and its application to the Guidelines, Reina* held that *Teague* did not bar retroactive application of *Grisel* regardless of the context because *Grisel* "altered the conduct that substantively qualifies as burglary under the categorical approach." *Reina*, 655 F.3d at 1189. *Reina*'s approach to retroactivity under the Guidelines supports retroactive application of *Johnson* to collateral attacks on Guidelines-enhanced sentences because

> [l]ike *Grisel*, *Johnson* altered the conduct that substantively qualifies as a violent felony, and thus, announced a substantive rule. *Welch*, —— U.S. ——, 136 S.Ct. 1257, 194 L.Ed.2d 387 ("Under this framework, the rule announced in *Johnson* is substantive. By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" (quoting *Schriro*, 542 U.S. at 353, 124 S.Ct. 2519 . . .).

Following *Reina–Rodriguez*, substantive rules, like the one announced in *Johnson*, which narrow the subset of crimes that qualify as violent felonies under the ACCA, apply retroactively to the corresponding Guidelines provision without regard to how *Teague* might operate when applied independently to the Guidelines. [footnote 2 omitted]

Accordingly, through *Reina–Rodriguez*, *Welch*'s holding that *Johnson* is substantive and retroactive in the ACCA context binds this Court to the conclusion that *Johnson* applies retroactively to the Guidelines. [footnote 3: This conclusion is consistent with every other Ninth Circuit district court decision on the issue this Court could locate.]

*U.S. v. Rios*, 201 F.Supp.3d 1266, 1273–74, 2016 WL 4472996, *4 (E.D. Wash. Aug. 12, 2016) (paragraph breaks added).

**Lastly, without regard to any particular Guideline, our Circuit has broadly stated that the Supreme Court's retroactivity standard, *Teague v. Lane*, "should not be applied 'on a piecemeal basis.'"** *Rios*, 201 F.Supp.3d at 1273, 2016 WL 4472996 at *4 ("Ninth Circuit precedent precludes the as-applied approach to retroactivity advocated by the government.") (quoting *U.S. v. Sanchez–Cervantes*, 282 F.3d 664, 670 (9th Cir. 2002)). Our Circuit has cautioned that "[a] new rule should be retroactive as to all cases or as to none to avoid inconsistencies and unnecessary litigation." *Sanchez*, 282 F.3d at 670; *see also U.S. v. Pittman*, 120 F.Supp.2d 1263, 1269 (D. Or. 2000) ("Case law is clear that the determination of the retroactive application of a new Supreme Court rule cannot depend on the facts of a particular case. A new rule announced by the Supreme Court will either be retroactive as to all cases pending collateral review or to none."), *aff'd*, 31 Fed.Appx. 581 (9th Cir. 2002).[11]

This Court would run afoul of that principle if it treated *Johnson* as retroactive to ACCA sentence-enhancement cases but not retroactive to Career Offender Guideline-enhanced sentences. *Accord U.S. v. Kinman*, 2016 WL 6124456, *5 (S.D. Cal. Oct. 20, 2016) ("[C]onsistent with the Ninth Circuit's directive that retroactivity should not be applied 'on a piecemeal basis,' the court finds that, based on *Reina–Rodriguez* and *Welch*, *Johnson* applies retroactively to the Guidelines.") (citations omitted), *appeal filed*, No. 16–56568 (9th Cir. Oct. 21, 2016). *Cf. Autrey v. Potlatch Corp.*, 800 F.Supp. 872, 879 (N.D. Cal. 1992) ("The 1991 Act at issue in this case contains substantive, procedural, and remedial provisions. Thus, for the Court to apply the damage provisions retroactively, and the substantive provisions of the Act prospectively, would necessarily result in a piecemeal analysis and application of the 1991 Act. [T][he Court declines to embrace such an approach.").

For these reasons, the Court concludes that *Johnson* applies *retroactively* to collateral review of Career–Offender–Guideline-enhanced sentences, not only collateral review of ACCA-enhanced sentences.

## ANALYSIS OF THE "SPECIFIC" MERITS QUESTION

### LEGAL STANDARD: Determining Whether a Crime is "Violent" Under Guideline 4B1.2

Because this Court concluded that *Johnson*'s void-for-vagueness rule applies to the Guidelines *and* that *Johnson* applies retroactively to cases on collateral review of *Guidelines*-enhanced sentences, the Court concluded that the Residual Clause of the Career Offender Guideline was unconstitutionally void for vagueness under *Johnson*'s reasoning. Thus, petitioner is entitled to have this Court classify his current felony offense of conviction and his prior felony offenses only by reference to the remainder of the Career Offender Guideline and any applicable Application Notes, *without reference to the residual clause of that Guideline*.

"After excising the residual clause, the Career Offender Guideline defines a crime of violence as any ... federal or state [felony], "that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, [or] involves use of explosives." *U.S. v. Kinman*, 2016 WL 6124456, *6 (S.D. Cal. Oct. 20, 2016) (quoting U.S.S.G. 4B1.2(a)), *appeal filed*, No. 16–56568 (9th Cir. Oct. 21, 2016).

Note 1 of the commentary to the Career Offender Guideline further provides:

[Enumerated Offenses Clause] *"Crime of violence" includes* murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

[Force or Elements Clause] Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical person against the person of another, or (B)

---

11. Except for res judicata purposes, Ninth Circuit Rule generally prohibits the citation of the Ninth Circuit Court of Appeals's pre–2007 unpublished decisions by or to the courts of this circuit. This Court accordingly is not citing the unpublished 2002 Ninth Circuit decision in *Pittman* for its persuasive value. The Court cites that Ninth Circuit decision simply to be thorough and show the subsequent history of the district court's decision in *Pittman*. This Court is relying only on the district court's decision as persuasive authority.

the conduct set forth (i.e., expressly charged) in the court of [sic] which the defendant was convicted involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. 4B1.2, App. Note 1 (2008) (paragraph break added). "Thus, the court must still determine whether Defendant's conviction for ... robbery remains a crime of violence under the enumerated offenses clause or under the force/elements clause." *Kinman*, 2016 WL 6124456 at \*5.

Petitioner argues that the Note's specification of "robbery" as a violent crime under the Career Offender Guideline is not dispositive. But the Supreme Court has held unanimously that "**commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent, with, or a plainly erroneous reading of, that guideline.**" *Stinson v. U.S.*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *see, e.g., U.S. v. Rising Sun*, 522 F.3d 989, 996 (9th Cir. 2008); *U.S. v. Garcia–Cruz*, 40 F.3d 986, 989 (9th Cir. 1994) ("Had the ... court had the benefit of the Supreme Court's lecture delivered in *Stinson* [,] it would have known that it was necessary to heed the commentary."). The Supreme Court has explained that the Guidelines Manual contains three types of text:

First is a guideline provision itself. The Sentencing Reform Act establishes that the guidelines are "for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. section 994(a)(1). The Guidelines provide direction as to the appropriate type of punishment—probation, fine, or term of imprisonment—and the extent of the punishment imposed. Sections 994(a)(1)(A) and (B). Amendments to the Guidelines must be submitted to Congress for a 6–month period of review, during which Congress can modify or disapprove them. Section 994(p).

**The second variety of text in the Manual is a policy statement.** The Sentencing Reform Act authorizes the promulgation of "general policy statements regarding application of the guidelines" or other aspects of sentencing that would further the purposes of the Act. Section 994(a)(2).

**The third variant of text is commentary, at issue in this case.** In the Guidelines Manual, both guidelines and policy statements are accompanied by extensive commentary. Although the Sentencing Reform Act does not in express terms authorize the issuance of commentary, the Act does refer to it. *See* 18 U.S.C. section 3553(b) (in determining whether to depart from a guidelines range, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission"). The Sentencing Commission has provided in a guideline that commentary may serve these functions: commentary may "interpret [a] guideline or explain how it is to be applied," "suggest circumstances which ... may warrant departure from the guidelines," or "provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline." U.S.S.G. section 1B1.7.

*Stinson*, 508 U.S. at 41, 113 S.Ct. at 1917 (boldface added). Furthermore, "[w]here ... a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline." *Williams v. U.S.*, 503 U.S. 193, 201, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992).

■ The Court is aware that the Supreme Court declared the Sentencing Guidelines to be non-binding in *Booker*. But even post–*Booker*, the principle persists that courts are obligated to consult the Guidelines commentary and follow it where it does not conflict with the Guideline itself or with a federal statute. *See U.S. v. Lambert*, 498 F.3d 963, 966 (9th Cir. 2007) (" 'The Guidelines, including enhancements, are ordinarily applied in light of available commentary, including application notes.' ") (quoting *U.S. v. Staten*, 466 F.3d 708, 715 (9th Cir. 2006) (citing *Stinson*, 508 U.S. at 38, 113 S.Ct. 1913)).

■ In 2016, our Circuit reaffirmed the vitality of *Stinson* in the post–*Booker* era, stating, "[w]e ... interpret the commentary in the guidelines like 'an agency's interpretation of its own legislative rules' ", *U.S. v. Bernardo*, 818 F.3d 983, 985 (9th Cir. 2016) (quoting *Stinson*, 508 U.S. at 44–45, 113 S.Ct. 1913). This means that Sentencing Commission "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it ... is inconsistent with, or a plainly erroneous reading of, that guideline' ", *Bernardo*, 818 F.3d at 985 (quoting *U.S. v. Martin*, 796 F.3d 1101, 1108 (9th Cir. 2015) (quoting *Stinson*) and citing *U.S. v. Jackson*, 697 F.3d 1141, 1146 (9th Cir. 2012)). *See also, e.g., U.S. v. Neal*, 776 F.3d 645, 659 (9th Cir. 2015) ("To clarify when the two-level multiple-lien enhancement is applicable, we look to the application notes. 'In general, the application notes are binding on the courts in their Construction of the Sentencing Guidelines.' ") (quoting *U.S. v. Hernandez–Sandoval*, 211 F.3d 1115, 1117 n.3 (9th Cir. 2000)); *U.S. v. Reyes*, 772 F.3d 1152, 1158 (9th Cir. 2014) (following U.S.S.G. 1B1.3 commentary, panel stated, "[t]he Guidelines provide an instructive and analogous example of when a defendant can be held accountable for the conduct of others: ....."), *cert. denied*, —— U.S. ——, 135 S.Ct. 2337, 191 L.Ed.2d 998 (2015).

■ *Taylor v. U.S.*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), adopted a "formal categorical approach" for determining whether convictions qualify as predicate offenses under the ACCA. This requires a sentencing court to " 'look only to the statutory definitions'—i.e., the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.' " *Descamps v. U.S.*, —— U.S. ——, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013); *see, e.g., U.S. v. Dixon*, 805 F.3d 1193 (9th Cir. 2015) (employing categorical approach to conclude that California robbery was not a violent crime for purposes of the ACCA); *U.S. v. Herrold*, 2016 WL 7374884, *2 (M.D. Pa. Dec. 20, 2016).

■ "In ascertaining the scope of conduct criminalized by the elements of an offense, the court considers not only the statutory language, 'but also the interpretation of that language in judicial opinions ....' " *U.S. v. Hutcherson*, 2016 WL 6650383, *3 (N.D. Cal. Nov. 10, 2016) (quoting *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1054 (9th Cir. 2011) (internal quote marks omitted)). *See also Rodriguez–Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) and *U.S. v. Bonat*, 106 F.3d 1472, 1475–76 (9th Cir. 1997).

■ This "categorical 'mode of analysis ... require[s] courts to decide what a usual or ordinary violation of the statute entails and then determine how great a risk of injury that ordinary case presents.' " *U.S. v. Shumilo*, 2016 WL 6302524, *3 (C.D. Cal. Oct. 24, 2016) (quoting *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *reh'g denied*, No. 11–71307 (9th Cir.), *cert. granted on other grounds*, ——

U.S. ——, 137 S.Ct. 31, 195 L.Ed.2d 902 (2016)).[12]

■ To find an offense overbroad, there must a "realistic possibility, not a theoretical possibility," that the statute would be applied to conduct not encompassed by the generic federal definition. *See Hutcherson*, 2016 WL 6650383 at *3 (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 184, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)).

■ If the categorical approach reveals that the statute of conviction's elements are the *same* as the elements of the generic offense, then the statute is a categorical match, and every conviction under that statute qualifies as violent. *See Lopez–Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015). If the categorical approach reveals that the prior conviction's elements are *narrower than* the elements of the generic offense, then again the statute is a categorical match, and every conviction under that statute qualifies as violent. *See id.*

■ **But where a statute is overbroad, meaning it criminalizes conduct that goes beyond the elements of the generic offense, a Court must inquire further and determine whether the statute is divisible or indivisible.** *See Lopez–Valencia*, 798 F.3d at 867. In other words,

"[o]nly when the statutory language of the ... crime encompasses both violent and nonviolent behavior may the sentencing court look beyond the statutory language to determine whether the defendant's specific conduct amounted to a crime of violence." *U.S. v. France*, 574 F.Supp.2d 801, 803 (W.D. Mich. 2008) (Paul L. Maloney, C.J.) (citing *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143), *vac'd on other grounds*, 394 Fed.Appx. 246 (6th Cir. 2010).

■ **If the statute is indivisible, the inquiry ends, " 'because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense [for a sentence enhancement].' "** *Id.* (quoting *Medina–Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014)). In *U.S. v. Werle*, 815 F.3d 614, 623 (9th Cir. 2016), for example, the Ninth Circuit held that "the Washington riot statute is overinclusive as to the type of force used because it does not require the use of 'force capable of causing physical pain or injury to another person' as required by *Johnson*, 559 U.S. at 140, 130 S.Ct. 1265, .... * * * Therefore, the modified categorical approach has no role to play in this case,' *id.* and the Sixth Amendment requires that we 'presume that the conviction rested upon nothing more than the least of the acts criminal-

---

**12.** "[T]he fact that the Supreme Court recently granted certiorari in *Dimaya* has no effect on this Court's obligation to follow Ninth Circuit precedent unless and until the Supreme Court overrules it." *Shumilo*, 2016 WL 6302524 at *3 (Wu, J.) (citing *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a body competent to do so.")).

In any event, the Supreme Court did not grant certiorari on the question of when federal courts must employ the categorical approach, nor on the question of what a categorical analysis of convictions entails.

According to a Notice posted on the Supreme Court website, the "Question Present-

ed" in *Dimaya* is "[w]hether 18 U.S.C. section 16(b), as incorporated into the Immigration and Nationality Act's provisions governing an alien's removal from the United States, is unconstitutionally vague." *See* https://www.supremecourt.gov/search.aspx?Search=dimaya& type=Site, *last retrieved* on Dec. 15, 2016. The United States Attorney General filed her opening brief on appeal on November 14, 2016. Appellee Dimaya has not yet filed a brief, and oral argument has not yet been scheduled. *See* https://www.supremecourt.gov/search.aspx?filename=/docketfiles/15–1498.htm, *last retrieved* on Dec. 15, 2016.

ized under the … statute.'" *Werle*, 815 F.3d at 623 (quoting *Mellouli v. Lynch*, — U.S. ——, 135 S.Ct. 1980, 1986, 192 L.Ed.2d 60 (2015)). *Cf. also, e.g., U.S. v. Parnell*, 818 F.3d 974, 981 (9th Cir. 2016) ("[B]ecause the degree of force required to commit armed robbery in Massachusetts is immaterial so long as the victim is aware of it, Massachusetts' armed robbery statute does not have 'as an element the use, attempted use, or threatened use of force against the person of another.' [ACCA] Under the categorical approach, therefore, a conviction under the Massachusetts statute does not qualify as a violent felony under ACCA's force clause. The government does not argue [that] Parnell's conviction falls under section 924(e)(2)(B)(ii) or that the modified categorical approach applies. According, we hold Parnell's 1990 armed robbery conviction does not qualify as a predicate conviction for purposes of a sentencing enhancement under ACCA."); *U.S. v. Dixon*, 805 F.3d 1193, 1199 (9th Cir. 2015) ("Because CPC § 211 criminalizes conduct not included in the ACCA's definition of 'violent felony' and is not divisible, a conviction for violating CPC § 211 cannot serve as a predicate 'violent felony' conviction for the application of a mandatory minimum sentence under the ACCA."); *Alvarado*, 2016 WL 6302517 at *1 ("[The government] argues that the factual basis of Petitioner's plea … 'describes specific facts to illustrate the conclusion that the RICO conspiracy … was in fact a crime of violence. However, under *Taylor*'s categorical approach, courts may not look to 'particular facts underlying' a conviction in determining whether an offense categorically is a crime of violence.") (citing *Taylor*, 495 U.S. at 600, 110 S.Ct. 2143).

■ **If the statute is overbroad but divisible, however, "the Court may employ what has been termed 'the modified categorical approach' and consider a lim-** ited category of documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating." *Lopez–Valencia*, 798 F.3d at 867. Under the modified categorical approach, a prior conviction qualifies as a predicate (for purposes of the sentencing enhancement) "only if those documents reveal that the defendant was convicted of a version of the crime that fits within the definition of the generic offense." *Descamps*, 133 S.Ct. at 2284.

■ **Under the modified categorical approach, the Court may consider a limited range of documents sometimes known as "*Shepard* documents" after** *Shepard v. U.S.*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). **These include the charging document** (an indictment or information) **and jury instructions** (if there was a jury trial), *see Ramirez*, 810 F.3d at 1135 (citing *Taylor v. U.S.*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) and *Shepard*, 544 U.S. at 16, 125 S.Ct. 1254), **as well the judgment of conviction.** *See Ramirez*, 810 F.3d at 1135 ("The abstract of judgment similarly does not draw a distinction between the indirect and direct infliction [of harm] prongs" of willful harm or injury to a child under Cal. Penal Code section 273a). "Where the … conviction was secured pursuant to a plea, the sentencing court may consider the terms of the plea agreement, the transcript of the colloquy between the judge and the defendant where the factual basis for the plea was secured, or some comparable judicial record of the information." *France*, 574 F.Supp.2d at 803 (citing *Shepard*, 544 U.S. at 22, 125 S.Ct. 1254) and *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 189, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007) (clarifying *Shepard*'s holding that where a conviction is obtained by plea, the sentencing court may consider the *Taylor* documents

as well as documents relevant to the plea agreement)). Even under the modified categorical approach, however, a court may not look to police reports or complaint applications. *See U.S. v. Collier*, 493 F.3d 731, 733 (6th Cir. 2007).

Under the modified categorical approach, a federal court may also consider **transcripts of a plea colloquy (if the defendant pled guilty) or verdict forms (if the defendant was convicted following a jury trial).** *See Curtis Johnson v. U.S.*, 559 U.S. 133, 144, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). If defendant was convicted following a bench trial, the sentencing judge may consider the judge-factfinder's conclusions of law and findings of fact, *see id.*

**A statute is divisible where it** "lists **multiple, alternative elements, and so effectively creates 'several different … crimes.'** " *Descamps*, 133 S.Ct. at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009)). Where a statute lists alternative means of committing the crime, however, rather than alternative elements, then the statute is considered indivisible. *See Mathis v. U.S.*, —— U.S. ——, 136 S.Ct. 2243, 2251–56, 195 L.Ed.2d 604 (2016).

As the Supreme Court explained in *Mathis*, 136 S.Ct. at 2248, the questions of whether a particular statute is divisible (listing alternative elements) or indivisible (listing alternative means of committing the same crime), hinges on whether the jury must agree on the relevant facts: "Elements are the constituent parts of a crime's legal definition .... At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant." Accordingly, the Ninth Circuit explains, "the key question [the court] must ask when determining a statute's divisibility is whether a jury would have to be unanimous in finding those separate ele-

ments." *Ramirez v. Lynch*, 810 F.3d 1127, 1134 (9th Cir. 2016) (citations omitted).

If the relevant law makes clear that a defendant can be found guilty only if the jury unanimously agrees on which of a statute's listed alternatives the defendant committed, the statute lists alternative elements, and is divisible. *See Lopez–Valencia*, 798 F.3d at 868–69. But if the jury need not agree on which alternative the defendant employed to find him guilty, the statute lists alternative means and is indivisible, *see id.*

**The Ninth Circuit provides an example that explains the intricacies of determining whether a particular criminal statute is divisible or indivisible for this purpose:**

> Imagine a statute that criminalizes assault with "a gun or an axe." A federal law imposes penalties only for defendants previously convicted of "gun offenses."
>
> If state law makes clear that a defendant can be found guilty only if all twelve jurors agree that the defendant used a gun or if all twelve jurors agree that the defendant used an axe, the statute has alternative elements and is divisible. The court may then apply the modified categorical approach to determine whether the defendant was accused and convicted of using a gun or an axe.
>
> If, however, the defendant can be convicted with six jurors believing the defendant used a gun and six jurors believing the defendant used an axe, the statute lists [merely] alternative means and is indivisible.

*Lopez–Valencia*, 798 F.3d at 869 (paragraph breaks added).

In petitioner's favor, the Court notes the argument that robbery cannot be a crime

of violence under the Enumerated Offenses Clause "because robbery is not specifically in the text of section 4B1.2(a)(2)." *Alvarado*, 2016 WL 6302517 at *7. "**However, while robbery is not listed in the text of section 4B1.2(a)(2), the commentary to section 4B1.2 includes Application Note 1, which provides several additional enumerated offenses, including robbery.**" *Alvarado*, 2016 WL 6302517 at *7 (citing U.S.S.G. 4B1.2 App. N. 1 (2011)). At the time of Savage's sentencing, Note 1 flatly provided, in pertinent part, that " 'Crimes of violence' includes . . . robbery . . . ." U.S.S.G. section 4B1.2 App. N. 1 (2008). *Accord U.S. v. Alexander*, 642 Fed. Appx. 506, 513 (6th Cir. 2016) ("This court has relied in the past on the enumeration of offenses in the application notes to U.S.S.G. section 4B1.2 when reviewing career offender sentence enhancements.") (citing *U.S. v. Wood*, 209 F.3d 847, 851 (6th. Cir. 2000) (Alabama robbery was a crime of violence both because the statute required physical force and because robbery was one of the enumerated offenses in U.S.S.G. § 4B1.2 Note 1)), *cert. granted & case remanded on other grounds*, —— U.S. ——, 137 S.Ct. 295, 196 L.Ed.2d 209 (2016).

App. Note 1 to Career Offender Guideline Still Applies After Excision of Guideline's Residual Clause,

Petitioner argues that because the residual clause of the Career Offender Guideline (U.S.S.G. § 4B1.2(a)(2)) is now void-for-vagueness, Note 1 is no longer in effect. This is so, petitioner reasons, because Note 1 was merely interpreting the residual clause, not the rest of the Guideline. The Court must reject petitioner's argument in light of the Supreme Court's language in

*Johnson* and in light of Ninth Circuit precedent regarding the authoritative nature of Application Notes.[13] *Accord U.S. v. Kinman*, 2016 WL 6124456, *5 (S.D. Cal. Oct. 20, 2016) ("While [petitioner] puts forth a reasonable argument, the court is not willing to assume, in the absence of any solid authority, that *Johnson* invalidated Application Note 1 or nullified its list of offenses.").

First, "because *Johnson* left intact the Career Offender Application Notes, '[t]here is no escaping [the] language of the application notes or its binding application.' " *U.S. v. Smith*, 2016 WL 6875877, *7 (E.D. Tenn. Nov. 21, 2016) (quoting *U.S. v. Stephens*, 651 Fed.Appx. 445, 448 (6th Cir. 2016) (Tennessee aggravated burglary was a crime of violence because Note 1 to Career Offender Guideline enumerated burglary as a crime of violence) and citing *U.S. v. Morris*, 641 Fed.Appx. 457, 461 (6th Cir. 2016) (Ohio aggravated assault still qualified as a crime of violence post–*Johnson* because it was "one of the enumerated crimes of violence listed in Application Note 1 to the career offender guideline"), *cert. denied*, —— U.S. ——, 137 S.Ct. 51, 196 L.Ed.2d 55 (2016), and *In re Smith*, No. 16–5888, —— F. App'x —— (6th Cir. Oct. 27, 2016) (Tennessee aggravated assault still qualified as a crime of violence post–*Johnson* because it qualified as "generic aggravated assault", enumerated as a crime of violence in Note 1)), *appeal filed*, No. 16–6720 (6th Cir. Nov. 29, 2016). *See also U.S. v. Knight*, 2016 WL 223701, *9 n. 9 (D.N.J. Jan. 19, 2016) ("Although there is no record of whether the enumerated offenses listed in Application Note 1 of U.S.S.G. section 4B1.2 are interpretations

---

**13.** Whether "a crime listed only in the Application Notes to U.S.S.G. section 4B1.2 (e.g., robbery) . . . qualif[ies] as a 'crime of violence' so as to support classifying a defendant as a career offender" "is the third issue certified by the Supreme Court in *Beckles*." *U.S. v. Taylor*, 2016 WL 5369476, *4 n.3 (S.D. Ill. Sept. 26, 2016).

of the force clause or the residual clause, the recent decisions in *Beckles v. U.S.*, 616 Fed.Appx. 415 (11th Cir. 2015)[, *cert. granted*, —— U.S. ——, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016) ] and *Denson v. U.S.*, 804 F.3d 1339 (11th Cir. 2015)[, *cert. denied*, —— U.S. ——, 136 S.Ct. 1214, 194 L.Ed.2d 217 (2016) ] suggest the former.").

Thus, by its terms, *Johnson* did not disturb the principle that the "Application Note is authoritative because it interprets and explains section 4B1.2 by listing offenses that constitute ... 'crimes of violence.'" *U.S. v. Walker*, 595 F.3d 441, 445 (2d Cir. 2010) (citing, *inter alia, Stinson*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598)).

**Second, "the reasoning behind the Supreme Court's invalidation of the Career Offender Guideline's residual clause does not apply" to Note 1.** *Smith*, 2016 WL 6875877 at *7. The Supreme Court concluded in *Johnson* that "the wide-ranging inquiry required by the residual clause" was so "indeterminate" that it "denied fair notice to defendants and invite[d] arbitrary enforcement by judges." *Johnson*, 135 S.Ct. at 2257. "In contrast, Application Note 1 to section 4B1.2 specifically lists out offenses that qualify as crimes of violence. * * * Application Note 1, therefore, provides an 'ascertainable standard' for its application, [so] it is not unconstitutionally vague. The concerns the Supreme Court raised in *Johnson*, therefore, are not present here." *Arthur Charles Smith*, 2016 WL 6875877 at *7 (internal citations omitted).

**Third, the Ninth Circuit has previously relied on offenses enumerated *only* in guidelines commentary to hold that California Penal Code ("CPC") section 211 (second-degree robbery) was categorically a crime of violence, relying on the applicable guideline's notes and not its text.**

In *U.S. v. Becerril–Lopez*, 541 F.3d 881, 892–93 (9th Cir. 2008), the Ninth Circuit held that CPC 211 robbery is a crime of violence for purposes of U.S.S.G. section 2L1.2. While the text of section 2L1.2 does not enumerate any offenses, the commentary provides a list of specific offenses that qualify as crimes of violence, including robbery and extortion. *See* U.S.S.G. 2L1.2 App. N. 1(B)(iii). The defendant in *Becerril* argued that CPC 211 includes conduct that is broader than the generic offense of robbery listed in the 2L1.2 commentary and thus cannot be a crime of violence. *See Becerril*, 541 F.3d at 891–921. The Circuit agreed with the defendant that CPC 211 includes a broader range of threats than the generic offense of robbery, such as threats to property. Nonetheless, the Circuit held that the broader range of threats not covered by generic robbery falls within generic extortion, which *is* listed as a crime of violence in 2L1.2's commentary. *See id.* at 891–92.

The Ninth Circuit in *Becerril* thus held that CPC 211 robbery was categorically a crime of violence for purposes of U.S.S.G. 2L1.2 *solely because it was enumerated as an example of a violent crime in the Sentencing Commission's commentary to that guideline. See Alvarado*, 2016 WL 6302517 at *7 (citing, *inter alia, Becerril*, 541 F.3d at 891–92); *see also U.S. v. Harris*, 572 F.3d 1065, 1066 (9th Cir. 2009) (pursuant to the reasoning of *Becerril*, a conviction under Nevada's robbery statute is a crime of violence by force of the Career Offender Guideline's commentary). *Accord Hollins v. U.S.*, 2016 WL 6769026, *2 (N.D. Miss. Nov. 15, 2016) ("[P]ost–*Johnson*, the Fifth Circuit has continued to treat enumerated offenses listed in Application Note 1 of the Commentary to [U.S.S.G.] section 4B1.2 as crimes of violence.") (citing, *inter alia, U.S. v. Torres–Jaime*, 821 F.3d 577 (5th Cir. 2016), *pet. cert. filed*, No. 16–5853

(U.S. Sept. 6, 2016); *Hernandez–Vega v. U.S.*, 2016 WL 6581159, \*2 (C.D. Ill. Nov. 4, 2016) ("The Court would also note that robbery continues to be one of the crimes specifically enumerated in section 2L1.2 Application Note 1(B)(iii), which defines a crime of violence for purposes of section 2L1.2(b)(1). *As 'enumerated clauses' listing specific offenses deemed to be crimes of violence were also undisturbed by Johnson,* his claim would fail for this reason, as well.") (italics added).

In a recent unpublished opinion, the Ninth Circuit affirmed that *Becerril* is "undisturbed by *Johnson....*" *U.S. v. Tate*, No. 15–10283, 659 Fed.Appx. 386, 2016 WL 4191909, \*1–\*2 (9th Cir. Aug. 9, 2016). The Court has not located any unpublished Ninth Circuit opinions to the contrary and thus follows *Tate*.

Applying U.S.S.G. 4B1.2 App. Note 1, Title 18 U.S.C. 2113(a) Unarmed Bank Robbery Is Violent

■ In keeping with *Becerril–Lopez* and *Harris*, the Court follows the Career Offender Guideline's commentary and determines that Savage's convictions for unarmed federal bank robbery are crimes of violence for purposes of that Guideline. *Accord U.S. v. Scott*, 818 F.3d 424, 434–35 (8th Cir. 2016) (defining the term "crime of violence" to mean any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" *or* that "is enumerated in the Guidelines or *accompanying commentary.*"); *Bryant v.*

*US*, 2016 WL 3251759, \*2 (W.D. Mich. June 14, 2016) (denying 2255 motion, court stated that because "*Johnson* left intact the career-offender application notes and "Note 1 to U.S.S.G. section 4B1.2 expressly includes robbery in the definition of crime of violence", "the court did not need to rely on the [Guideline's] residual clause to apply the career offender enhancement); *Littles v. Perdue*, 2015 WL 4727029, \*2 (M.D. Pa. Aug. 10, 2015) (declining to consider the facts of prior robberies, court applied Note 1 to classify them as violent, rejecting petitioner's argument that the robberies were "not crimes of violence under 4B1.2 because they do not have force as an element and do not otherwise involve conduct that presents a serious potential risk of physical injury to another"), *appeal filed*, No. 15–3003 (3d Cir. Aug. 20, 2015).[14]

■ "[W]hen our focus is on the generic elements of the offense ... rather than a specific defendant's conduct, we must consider the lowest level of conduct that may support a conviction under the statute." *U.S. v. Bell*, 840 F.3d 963 (8th Cir. 2016) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013) ("Because we examine what the ... conviction *necessarily* involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts criminalized,' and then determine whether even those acts would qualify as a crime of violence.") (bracketed text added by *Bell*)) (italics added). "Although

---

14. A Ninth Circuit panel recently declined to decide whether *armed* bank robbery in violation of 18 U.S.C.§ 2113(a) and (d) constitutes a crime of violence after *Johnson. See U.S. v. Brown*, 671 Fed.Appx. 484, 2016 WL 7010901, \*1 (9th Cir. Dec. 1, 2016) ("The parties filed supplemental briefs ... addressing whether Brown's conviction for a violation of 18 U.S.C. section 924(c) should be set aside and whether this issue may be raised for

the first time in his appeal. Brown contends that his conviction for a violation of section 2113(a) and (d) is no longer a crime of violence after *Johnson v. U.S.* ... and that this Court has the discretion to decide issues waived or not reached in the district court. We conclude that Brown is required to 'move the court which imposed the sentence to vacate, set aside or correct the sentence.'") (quoting section 2255(a)) (citation omitted).

the 'theoretical possibility' that [the government that enacted the criminal statute] may apply its statute to conduct falling short of violen[ce] ... is not enough to disqualify conviction, a 'realistic probability' will suffice." *Bell*, 840 F.3d at 966 (quoting *Moncrieffe*, 133 S.Ct. at 1685 (citation omitted)).

■ Generic robbery, one of the crimes enumerated as violent in Note 1, is the unlawful "taking of property from another person or from the immediate presence of another person by force *or* intimidation." *U.S. v. Fritts*, 841 F.3d 937, 941 n.5 (11th Cir. 2016) (citations omitted); *accord U.S. v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010); *U.S. v. McGuire*, 2016 WL 4479129, *2 (D. Kan. Aug. 25, 2016) (citing *U.S. v. O'Conner*, 2016 WL 4273199, *4 (D. Kan. Aug. 15, 2016)).

"The robbery component of § 2113(a)"—unarmed bank robbery—matches up with all of the foregoing elements, and is thus a crime of violence under U.S.S.G. section 4B1.2." *McGuire*, 2016 WL 4479129 at *2. This Court therefore determines "in applying the force clause of the [U.S.S.G.] section 4B1.2, ... that 'a defendant property convicted of bank robbery is guilty per se of a crime of violence, because violence in the broad sense that includes merely threatened use of force is an element of every bank robbery. * * * There is no space between 'bank robbery' and 'crime of violence.' " *U.S. v. Cunningham*, 2016 WL 687902, *2 (N.D. Ill. Feb. 19, 2016) (quoting *U.S. v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991)). The Court accordingly rejects petitioner's contrary characterization of 2113 bank robbery, *see* CR Doc 27 at 11–21 and CV Doc 18 at 36–42.

Thus, 2113(a) bank "robbery by intimidation qualifies under the enumerated clause because it is nearly identical to the generic definition of robbery, and notably, both involve a perceived threat of bodily harm." *U.S. v. Johnson*, 2016 WL 6775916, *2 (11th Cir. Nov. 16, 2016). *See also* 67 Am. Jur.2d Robbery § 12 (robbery "is the taking, with intent to steal, personal property of another, from his or her person or in his or her presence, against his or her will, by violence, *intimidation*, or by threatening the imminent use of force") (italics added).[15]

As the Court of Appeals recently explained, bank robbery by "force and violence"

> plainly involves "the use, attempted use, or threatened use of force." Whether the same is true of bank robbery by intimidation is a closer question, although not by much. In the context of section 2113(a), "intimidation" means "conduct and words, ... calculated to create the impression that any resistance or defiance would be met by force." *U.S. v.*

---

**15.** This is the general and overwhelmingly applicable understanding of robbery. There may be isolated examples under state law where a person can commit robbery without even employing intimidation, but such unusual robbery statutes are readily distinguishable from the federal bank robbery statute, 18 U.S.C. sections 2113(a) and (d). *See, e.g., U.S. v. Dubose*, 224 F.Supp.3d 104, 108, 2016 WL 7365166, *3 (D. Mass. Dec. 19, 2016) ("[T]he government argues that the Massachusetts armed robbery statute involves violent force because committing a robbery necessarily demonstrates that the robber is willing to use violent force to commit the offense. Therefore, the argument goes, by using force sufficient to put the victim on notice that a theft has occurred, the robber silently makes a threat of force sufficient to satisfy the ACCA. * * * The government's argument would work '[i]f every robbery involved an implied threat of violent force,' because under those circumstances 'every victim would be placed in fear.' Such is the not the case under Massachusetts law, however: a robbery may be committed even if the victim is not placed in fear.") (internal citations, quotation marks, and concluding citations omitted).

*Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002); *see also* ... 1 Encyclopedia of Crime and Justice 115, 115 (... Kadish ed., 1983) ("[R]obbery by intimidation involves the threat[ ] to do *immediate* bodily harm, ....

Intimidation concerns whether an ordinary person would feel threatened under the circumstances, *Gilmore*, 282 F.3d at 403, but the prosecution must prove that the defendant possessed "general intent—that is ... knowledge" with respect to taking the property by intimidation, *Carter v. U.S.*, 530 U.S. 255, 268, 120 S.Ct. 2159 (2000). The defendant must at least know that his actions would create the impression in an ordinary person that resistance would be met by force. **A taking by intimidation under section 2113(a) therefore involves the threat to use physical force.** *See, e.g., U.S. v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016)[, *cert. denied*, —— U.S. ——, 137 S.Ct. 164, 196 L.Ed.2d 138 (2016) ]; * * *; *U.S. v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990).

*U.S. v. McBride*, 826 F.3d 293, 295–96 (6th Cir. 2016) (boldface added, italics in original), *reh'g denied* (6th Cir. July 20, 2016), *pet. cert. filed*, No. 16–06475 (U.S. Oct. 18, 2016).[16]

*Accord U.S. v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016) (" '[T]aking by intimidation under 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.' ") (quoting *U.S. v.*

*Wagstaff*, 865 F.2d 626, 627 (4th Cir. 1989) (citing *U.S. v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987))); *U.S. v. Hullum*, 2016 WL 7178312, *5 (D. Colo. Dec. 9, 2016) ("Hullum argues that [2113(a) ] bank robbery can be satisfied merely by intimidation, which does not meet the physical-force clause [of 18 U.S.C. § 924(c)(3)(A) ]. But other federal courts of appeals have reached the contrary conclusion because 'intimidation' in the bank-robbery statute involves the 'threatened use of physical force' under the physical-force clause. This Court sees no reason to part ways from these persuasive authorities.") (citations omitted); *U.S. v. Rachal*, 222 F.Supp.3d 113, 115–16, 2016 WL 7165712, *2–*3 (D. Mass. Dec. 7, 2016).[17]

Employing much the same reasoning, the Ninth Circuit in the pre–*Johnson* era applied U.S.S.G. 4B1.2 Note 1 to conclude that unarmed bank robberies in violation of section 2113(a) are crimes of violence even when the robber did not use or carry a weapon, did not expressly threaten to harm anyone, and did not harm anyone. *See Selfa*, 918 F.2d at 751. "[O]ther district courts in the Ninth Circuit have determined that *Selfa* remains good law. *Gilbert* ... affirmed that 'bank robbery [under 2113(a) ] is a crime of violence by its elements, per U.S.S.G. section 4B1.2(a)(1), without reference to the residual clause in section 4B1.2(a)(2)" and without reference to 4B1.2 Note 1. *See U.S. v. Holmes*, 2016 WL 6947499, *4 (N.D. Cal. Nov. 28, 2016)

---

16. The Supreme Court recently denied certiorari as to the determination that "taking by intimidation under section 2113(a) involves the threat to use physical force and thus armed bank robbery is a crime of violence under 18 U.S.C. section 924(c)(3)(A)." *U.S. v. Gill*, 667 Fed.Appx. 789, 789, 2016 WL 4087787, *1 (4th Cir. Aug. 2, 2016) (per curiam) (citing *McNeal*, 818 F.3d at 153), *cert. denied*, 2016 WL 6396008 (U.S. Dec. 12, 2016).

17. *Cf. Allen v. US*, 836 F.3d 894, 894–95 (8th Cir. 2016) ("[F]ederal robbery under 18 U.S.C. § 2111 [not *bank* robbery in violation of § 2113], which must be committed 'by force and violence, or intimidation,' 'has as an element the attempted use, or threatened use of physical force against the person of another' ") (cites omitted).

(quoting *Gilbert v. U.S.*, 2016 WL 5807910, \*1 (S.D. Cal. Oct. 4, 2016), *appeal filed*, No. 16–56554 (9th Cir. Oct. 20, 2016), and citing *U.S. v. Bailey*, 2016 WL 3381218 (C.D. Cal. June 8, 2016)), *recon. denied*, 2016 WL 3607155 (C.D. Cal. June 30, 2016)). *Cf. Jackson v. U.S.*, 2016 WL 6901268, \*4 (E.D.N.C. Nov. 22, 2016) ("Bank robbery [under 2113(a)] constitutes a crime of violence under section 924(c)'s force clause, as opposed to section 924(c)'s residual clause.") (citing *McNeal*, 818 F.3d at 157).

*A fortiori,* the elements of Savage's prior for federal *armed* bank robbery likewise match up with Note 1 generic robbery's "unlawful taking of property from another person or from the immediate presence of another by force or intimidation." *See* 18 U.S.C. § 2113(d) ("Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, . . . ."). As Chief Justice Stone noted when discussing an earlier version of the federal bank robbery statute, "there can be no robbery unless the purpose of the victim in handing over the money is to avoid force", *U.S. v. Local 807 Teamsters*, 315 U.S. 521, 540, 62 S.Ct. 642, 86 L.Ed. 1004 (1942) (Stone, C.J., dissenting on other grounds). Putting someone's life in jeopardy by using a weapon to effect a bank robbery—as petitioner did in 1991 (sentenced in LA CR 90–01008–K–1 on May 6, 1991)—certainly constitutes the intimidation element of generic robbery, *McGuire*, 2016 WL 4479129 at \*2.

ALTERNATIVE HOLDING:SECTION 2113(a) UNARMED BANK ROBBERY AND 2113(d) ARMED BANK ROBBERY ARE VIOLENT CRIMES UNDER USSG 4B1.2'S ELEMENTS CLAUSE

Because the Commission has instructed the Court in Note 1 always to treat robbery as violent for purposes of the Career Offender Guideline, the Court arguably need not consider whether petitioner's robbery convictions would also be violent under the Elements Test. *Accord U.S. v. Pettis*, 2016 WL 5107035, \*4 (D. Minn. Sept. 19, 2016) (after concluding Note 1 remained in force after *Johnson* and designated robbery as violent, the court stated, "robbery has long been and continues to be an enumerated crime of violence for purposes of the Sentencing Guidelines. Thus, it is irrelevant whether robbery also qualifies as a crime of violence under the Guideline's force clause."), *appeal filed*, No. 16–3988 (8th Cir. Oct. 20, 2016); *cf. U.S. v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) ("Because the ACCA's definition of 'violent felony' lacks [a reference to] 'robbery' by name, any violation of CPC § 211 that does not constitute extortion must have 'as an element the use, attempted use, or threatened use of physical force against the person.'") (citing 18 U.S.C. § 924(e)(2)(B)(I)).

Nonetheless, as the Court will note in the forthcoming COA Order, reasonable jurists could disagree as to whether Note 1 survives *Johnson*. Even a reasonable jurist who concludes that Note 1 survived *Johnson* could still disagree as to whether that Note "contradicts" or "expands" the text of the Guideline by listing generic robbery as always a violent crime, or merely permissibly explains the text of the Guideline.

Thus, the Court will analyze whether unarmed bank robbery in violation of section 2113(a) and armed bank robbery in violation of 2113(a) and (d) would still constitute violent crimes under the Career Offender Guideline after that Guideline is stripped of both the residual clause and Note 1. The Court con-

cludes in the affirmative that both these versions of federal bank robbery under section 2113 *would* still constitute violent crimes. *See, e.g., U.S. v. Johnson,* 665 Fed.Appx. 788, 2016 WL 6775916, *2 (11th Cir. 2016) (per curiam) ("Second, [the] offense of [unarmed 2113(a) bank robbery by intimidation] qualifies under the elements clause because it has as an element 'the threatened use of physical force against the person of another") (citing U.S.S.G. 4B1.2(a)(1)); *cf. U.S. v. Armour,* 840 F.3d 904 (7th Cir. 2016) ("[R]obbery by intimidation under § 2113(a) and robbery by assault by a dangerous weapon or device under § 2113(d) have as an element the use, attempted use, or threatened use of physical force against the person or property of another and thus qualify as crimes of violence under [18 U.S.C.] § 924(c).") (citations omitted), *followed by Meeker v. U.S.,* 2016 WL 7388406, *2 (W.D. Wis. Dec. 21, 2016), as to armed bank robbery under 2113(a) and (d); *U.S. v. Key,* 2016 WL 6996030 (N.D. Ind. Nov. 30, 2016). As a sister court cogently explained,

> [Petitioner] argues that some means of committing bank robbery involve the use of force while others do not, and that the Supreme Court's recent decision in *Mathis v. U.S.,* —— U.S. ——, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), prohibits courts from utilizing the modified categorical approach in these circumstances to determine whether a defendant's offense is a crime of violence.

> However, [his] reliance on *Mathis* is unavailing because ... 2113(a), the federal bank robbery statute, "contain[s] a divisible set of elements," not a single set of elements that can be met by various means. *McBride,* 826 F.3d at 296. Use of the modified categorical approach remains appropriate in these circumstances, and it is undisputed that [petitioner]'s offense falls under the set of

elements that involve the use of force and thus constitute crimes of violence. *·U.S. v. McComb,* —— Fed.Appx. ——, ——, 2016 WL 6994235, *2 (6th Cir. 2016).

Unlike the robberies in *McComb,* it cannot be said that Savage's robberies involved the actual or attempted use of force. As discussed above, however, all of Savage's federal bank robberies, armed and unarmed, necessarily involved at least *intimidation.* As also discussed above, the intimidation necessarily and inherently involved in Savage's federal bank robberies made Savage's robberies match up to "generic robbery", which Note 1 specified is always a violent crime. *Cf. U.S. v. Roman,* 2016 WL 7388388, *2–*3 (S.D. Tex. Dec. 20, 2016) (employing modified categorical approach, court determined that prior conviction for Texas robbery by threat constituted a violent crime for purposes of the ACCA, because the threat element required that petitioner have "threatened or placed another 'in fear of imminent bodily injury or death'" and thus satisfied 18 U.S.C. section 924 (e)(2)(B)(I)'s "threatened use of physical force against the person of another).

■ Likewise, even if one strips the Guideline of both the residual clause *and Note 1,* the intimidation inherently involved in Savage's unarmed bank robberies makes them "violent" under the "elements test" that remains in the Guideline. Under U.S.S.G. 4B1.2, those robberies were violent because they were "ha[d] as an element the use, attempted use, or *threatened use* of physical force against the person of another ...." Italics added. Our Circuit has not issued a published decision to this effect, but it has issued an *un* published decision concluding that "[n]otwithstanding the [possible invalidation by *Johnson* of the] residual clause in section 4B1.2(a)(2)," convictions for un-

armed credit union robbery, unarmed bank robbery, and attempted unarmed bank robbery in violation of section 2113(a) "categorically qualif[y] as a 'crime of violence' under the remainder of the definition provided in section 4B1.2(a)." *U.S. v. Steppes,* 651 Fed.Appx. 697, 697–98 (9th Cir. 2016) (citing, *inter alia, Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir. 2003) (en banc)), *cert. denied,* —— U.S. ——, 137 S.Ct. 529, 196 L.Ed.2d 429 (2016); *accord U.S. v. Copeland,* 2016 WL 7188610, *3 (N.D. Ind. Dec. 12, 2016) ("The due process claim is without merit because bank robbery under section 2113(a) and (d) is a crime of violence under section 924(c)'s elements clause. The Defendant's conviction does not implicate section 924 (c)'s residual clause.") (citing *U.S. v. Armour,* 840 F.3d 904, 908–909 (7th Cir. 2016)).

*A fortiori,* even if one strips the Guideline of both the residual clause and App. Note 1, the intimidation inherently involved in Savage's prior federal *armed* bank robbery makes that robbery a "violent" crime under the "elements test" that remains in the Guideline as well. *Accord Cotter v. U.S.,* 2016 WL 7116097, *4 (E.D. Tenn. Dec. 6, 2016) (Thomas Varlan, Chief Judge) ("Reference to the relevant [criminal] complaint reveals that Petitioner's prior federal bank robbery involved violation of both section 2113(a) and (d) ..., meaning he 'assault[ed] ... or put in jeopardy the life of [another] person by the use of a dangerous weapon or device' during the bank robbery. *Because use of such a weapon or device necessarily equates to the* use, attempted use, or *threatened use of violent physical force, the conviction remains a crime of violence [for purposes of the ACCA's force/elements clause] after the Johnson decision.*") (bracketed alterations in *Cotter*) (internally citing *Braden v. U.S.,* 817 F.3d 926, 933 (6th Cir. 2016) and *U.S. v. Whindleton,* 797 F.3d 105, 114 (1st Cir.

2015), *cert. dis.,* —— U.S. ——, 137 S.Ct. 23, 195 L.Ed.2d 896 (2016), *cert. denied,* —— U.S. ——, 137 S.Ct. 179, 196 L.Ed.2d 147 (2016)); *Kinningham v. U.S.,* 2016 WL 7116101, *3–*4 (E.D. Tenn. Dec. 6, 2016); *U.S. v. Hunter,* 2016 WL 7115971 (D. Me. Dec. 6, 2016) (citing, *inter alia, Kucinski v. U.S.,* 2016 WL 4444736 (D.N.H. Aug. 23, 2016), *appeal docketed,* No. 16–2305 (1st Cir. Oct. 27, 2016)); *Naquan Moore v. U.S.,* 2016 WL 7049138 (E.D. Wis. Dec. 2, 2016) (Stadtmueller, J.) (same).

**Accordingly, the Court will deny Savage's habeas petition for lack of merit.**

ORDER

**Savage's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence (LA CV 16–03684–VBF Doc # 1 and LA CR 08–00258–VBF Doc #27) is DENIED.**

**The Court will grant a COA to petitioner by separate order.** *See generally* 28 U.S.C. § 2255(d); *cf., e.g., Daniels v. U.S.,* 2016 WL 6680038, *3 (S.D. Cal. Nov. 14, 2016) (determining that even after excision of ACCA residual clause under *Johnson,* 2113(d) armed bank robbery still constituted a violent felony under the ACCA's elements provision, 18 U.S.C. § 924(c)(3), but granting a COA); *Tyson Ford v. U.S.,* 2016 WL 7387414, *1 (D. Mass. Dec. 21, 2016) (granting petitioner a COA to appeal the determinations that his convictions for Massachusetts armed and unarmed robbery constituted crimes of violence for purposes of the ACCA).

**The Court will enter final judgment against petitioner Savage in the civil habeas case, LA CV 16–03864–VBF.** As required by Fed. R. Civ. P. 58(a), the judgment will be entered as a separate document.

This case shall be **TERMINATED and CLOSED (JS-6)**.

IT IS SO ORDERED.